**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JANE CUMMINGS, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:18-cv-01746-X |
| | § | |
| NEIGHBORHOOD ASSISTANCE | § | |
| CORPORATION OF AMERICA, | § | |
| | § | |
| **Defendant.** | § | |

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY MOTION FOR**
**SUMMARY JUDGMENT**

_____

Dated:  October 3, 2019

Andrew Rozynski
David John Hommel (*admitted pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708
arozynski@eandblaw.com
dhommel@eandblaw.com
*Attorneys for Plaintiff*

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 3

I.     **Plaintiff Jane Cummings Is Deaf, and Her Primary Language Is American Sign Language** ...................................................................................................... 3

II.    **Defendant Denied Her Requests for an Interpreter** ........................................... 3

ARGUMENT ................................................................................................................... 4

I.     **Legal Standard** ....................................................................................................... 5

II.    **Contrary to Defendant's Position, the Court Has Subject-Matter Jurisdiction** .......... 5

     A.   Plaintiff Is Entitled to Emotional-Distress Damages under the Rehabilitation Act ......................................................................................................... 5

         i.    Defendant Ignores the Weight of Authority Allowing a Litigant to Recover Emotional-Distress Damages Based on Fair-Notice Principles ....................................................................................... 5

         ii.   Defendant Compounds Its Error by Ignoring Public Policy ...................... 13

         iii.  Defendant's Position Contravenes Statutory Goals and Congressional Intent ............................................................................... 15

     B.   Even if Emotional-Distress Damages Were Unavailable, Plaintiff Is Entitled to Nominal Damages under the Rehabilitation Act Because of Technical Violations of the Law ............................................................................. 17

     C.   Plaintiff Is Entitled to Declaratory Relief under the Americans with Disabilities Act and the Rehabilitation Act Because Defendant Has Neither Written Policies Nor Written Training Materials on Effective Communication ......................................................................................... 19

III.   **Defendant Is Not Entitled to Dismissal or Summary Judgment Because Effective Communication Is a Fact-Intensive Inquiry Best Suited for Trial** ............. 23

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Choate*,
    469 U.S. 287 (1985) ................................................................................................................ 20

*Arce v. Louisiana*,
    No. 16-14003, 2019 U.S. Dist. LEXIS 152970 (E.D. La. Sept. 9, 2019) ......................... 17, 18

*Arena v. Graybar Elec. Co.*,
    669 F.3d 214 (5th Cir. 2012) .................................................................................................. 4, 5

*B & M Homes v. Hogan*,
    376 So. 2d 667 (Ala. 1979) ....................................................................................................... 11

*Baker v. Bell*,
    630 F.2d 1046 (5th Cir. 1980) ................................................................................................. 15

*Barnes v. Gorman*,
    536 U.S. 181 (2002) ......................................................................................................... passim

*Bell v. Bd. of Educ. of the Albuquerque Pub. Schs.*,
    652 F. Supp. 2d 1211 (D.N.M. 2008) ....................................................................................... 10

*Bell v. Hood*,
    327 U.S. 678 (1946) .................................................................................................................. 6

*Biondo v. Kaleida Health*,
    No. 15-CV-362-FPG-LGF, 2018 U.S. Dist. LEXIS 60789 (Apr. 10, 2018), *rev'd on other
    grounds*, 35 F.3d 68 (2d Cir. 2019) ......................................................................................... 23

*Bracken v. G6 Hospitality LLC*,
    No. 4:14-CV-644-ALM-CAN, 2016 U.S. Dist. LEXIS 95242 (E.D. Tex. June 3, 2016) ........ 23

*Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*,
    No. 4:10CV00007, 2011 U.S. Dist. LEXIS 47125 (W.D. Va. May 2, 2011) ............................. 8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................................ 23

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
    631 F.3d 939 (9th Cir. 2011) ................................................................................................... 20

*Christiana Tr. v. Riddle*,
    911 F.3d 799 (5th Cir. 2018) .................................................................................................... 5

*Clarkson v. Coughlin*,
    898 F. Supp. 1019 (S.D.N.Y. 1995)..............................................................................20

*Clehm v. Bae Sys. Ordnance Sys.*,
    No. 7:16-cv-00012, 2018 U.S. Dist. LEXIS 210793 (W.D. Va. Dec. 14, 2018).....................11

*Cummings v. Premier Rehab, P.L.L.C.*,
    No. 4:18-CV-649-A, 2019 U.S. Dist. LEXIS 7587, at *9–10 (N.D. Tex. Jan. 16, 2019),
    *appeal docketed*, No. 19-10169 (5th Cir. Feb. 8, 2019) ................................................9

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) .......................................................................................23

*Dawn L. v. Greater Johnstown Sch. Dist.*,
    586 F. Supp. 2d 332 (W.D. Pa. 2008)........................................................................8, 12

*Dean v. Dean*,
    821 F.2d 279 (5th Cir. 1987) .......................................................................................12

*DIRECTV, Inc. v. Contreras*,
    No. C-03-350, 2004 U.S. Dist. LEXIS 28571 (S.D. Tex. Jan. 5, 2004)........................2, 19, 20

*Dismukes v. J&R Entm't, LLC*,
    No. 2:11-CV-409-CSC (WO), 2012 U.S. Dist. LEXIS 150531 (M.D. Ala. Oct. 19, 2012) ......8

*Dobbs-Weinstein v. Vanderbilt Univ.*,
    185 F.3d 542 (6th Cir. 1999) .......................................................................................10

*Duffy v. Riveland*,
    98 F.3d 447 (9th Cir. 1996) .........................................................................................24

*Farrar v. Cain*,
    756 F.2d 1148 (5th Cir. 1985) ...................................................................................2, 17

*Feldman-Boland v. Stanley*,
    No. 15cv6698, 2016 U.S. Dist. LEXIS 90994 (S.D.N.Y. July 13, 2016) ..................................2

*Franklin v. Gwinnett Cnty. Pub. Sch.*,
    503 U.S. 60 (1992).....................................................................................................1, 6

*Gardiner v. Nova Se. Univ., Inc.*,
    No. 06-60590-CIV-COHN, 2006 U.S. Dist. LEXIS 92774 (S.D. Fla. Dec. 22, 2006)...........10

*Giles v. GE*,
    245 F.3d 474 (5th Cir. 2001) .......................................................................................17

iv

*Gore v. Turner*,
   563 F.2d 159 (5th Cir. 1977) ...........................................................................11

*Grisham v. City of Fort Worth*,
   837 F.3d 564 (5th Cir. 2016) ...........................................................................17

*Guardians Ass'n v. Civil Serv. Comm'n of New York City*,
   463 U.S. 582 (1983)...............................................................................7, 15, 16

*Halliburton, Inc. v. Admin. Review Bd.*,
   771 F.3d 254 (5th Cir. 2014) (per curiam).....................................................2, 8, 9

*Irwin v. Veterans' Admin.*,
   874 F.2d 1092 (5th Cir. 1989), *aff'd sub. nom.*, *Irwin v. Dept. Vet. Affairs*, 498 U.S. 89
   (1990)....................................................................................................................5

*K.G. v. Santa Fe Pub. Sch. Dist.*,
   No. CIV 12-1209 KBM/GBW, 2014 U.S. Dist. LEXIS 190265 (D.N.M. Nov. 17, 2014)..8, 14

*Kemp v. Holder*,
   610 F.2d 231 (5th Cir. 1991) (per curiam)........................................................19, 20

*Khan v. Albuquerque Pub. Schs.*,
   652 F. Supp. 2d 1211 (D.N.M. 2003) ...............................................................10, 11, 14

*Lewellyn v. Sarasota Cty. Sch. Bd.*,
   No. 8:07-cv-1712-T-33TGW, 2009 U.S. Dist. LEXIS 48919 (M.D. Fla. June 1, 2009) ...........8

*Liese v. Indian River Cty. Hosp. Dist.*,
   701 F.3d 334 (11th Cir. 2012) ........................................................................15, 24

*Lopez v. Regents of the Univ. of Cal.*,
   5 F. Supp. 3d 1106 (N.D. Cal. 2013) ...................................................................8

*Luciano v. E. Cent. Bd. of Coop. Educ. Servs.*,
   885 F. Supp. 2d 1063 (D. Colo. 2012)..................................................................8

*Memphis Cmty. Sch. Dist. v. Stachura*,
   477 U.S. 299 (1986)..........................................................................................16

*Munday v. Waste Mgmt. of N. Am.*,
   997 F. Supp. 681 (D. Md. 1998) ........................................................................11

*Myers v. Central Fla. Investments, Inc.*,
   592 F.3d. 1201 (11th Cir. 2010) .....................................................................10, 11

*N.T. v. Espanola Pub. Schs.*,
   No. CIV 04-0415 MCA/DJS, 2005 U.S. Dist. LEXIS 48311 (D.N.M. June 21, 2005) ..... 12, 14

*Peralta Cmty. Coll. Dist. v. Fair Emp't & Hous. Com.*,
   801 P.2d 357 (Cal. 1990) ........................................................................................... 11

*Pierce v. District of Columbia*,
   128 F. Supp. 3d 250 (D.D.C. 2015) .................................................................... 3, 20

*Prakel v. Indiana*,
   100 F. Supp. 3d 661 (S.D. Ind. 2015) ...................................................................... 8

*Reed v. Illinois*,
   No. 12-cv-7274, 2016 U.S. Dist. LEXIS 60875 (N.D. Ill. May 9, 2016) .................................. 8

*Rittgers v. United States*,
   131 F. Supp. 3d 644 (S.D. Tex. 2015) .................................................................... 24

*Roohbakhsh v. Bd. of Trs. of the Neb. State Colls.*,
   No. 8:17CV31, 2019 U.S. Dist. LEXIS 142504 (D. Neb. Aug. 22, 2019) .................................. 8

*S.K. v. N. Allegheny Sch. Dist.*,
   146 F. Supp. 3d 700 (W.D. Pa. 2015) ...................................................................... 8

*Sadik v. Univ. of Houston*,
   No. H-03-4296, 2005 U.S. Dist. LEXIS 50074 (S.D. Tex. Aug. 1, 2005) .............................. 13

*Salinas v. City of New Braunfels*,
   557 F. Supp. 2d 777 (W.D. Tex. 2008) .................................................................... 24

*Scarlett v. Sch. of the Ozarks, Inc.*,
   780 F. Supp. 2d 924 (W.D. Mo. 2011) ...................................................................... 8

*Shaikh v. Tex. A&M Univ. Coll. of Med.*,
   739 F. App'x 215 (5th Cir. 2018) (per curiam) ...................................................... 20

*Sheely v. MRI Radiology Network, P.A.*,
   505 F.3d 1173 (11th Cir. 2007) .................................................................... passim

*Stamm v. N.Y.C. Transit Auth.*,
   No. 04-CV-2163 (SLT) (JMA), 2013 U.S. Dist. LEXIS 8534 (E.D.N.Y. Jan. 18, 2013) ......... 8

*State Auto Prop. & Cas. Ins. Co. v. Bartlett*,
   No. 3:12-CV-1711-P, 2012 U.S. Dist. LEXIS 193740 (N.D. Tex. Dec. 14, 2012) ................ 20

*Toth v. Barstow Unified Sch. Dist.*,
  No. 12-02217 TJH (DTBx), 2014 U.S. Dist. LEXIS 169669 (C.D. Cal. Dec. 8, 2014) ...........8

*United States v. Baylor Univ. Med. Ctr.*,
  736 F.2d 1039 (5th Cir. 1984) ..................................................................................15

*United States v. Cordero*,
  18 F.3d 1248 (5th Cir. 1994) ....................................................................................18

*United States v. Forest Dale, Inc.*,
  818 F. Supp. 954 (N.D. Tex. 1993) .......................................................................9, 10

*United States v. Lopez*,
  937 F.2d 716 (2d Cir. 1991)................................................................................18, 19

*United States v. Martinez-Gaytan*,
  213 F.3d 890 (5th Cir. 2000) ....................................................................................18

*United States EEOC v. UPS Supply Chain Solutions*,
  620 F.3d 1103 (9th Cir. 2010) ...................................................................................3

*Williams v. Trans World Airlines, Inc.*,
  660 F.2d 1267 (8th Cir. 1981) .............................................................................10, 11

*Witbeck v. Embry-Riddle Aeronatuical Univ., Inc.*,
  269 F. Supp. 2d 1338 (M.D. Fla. 2003)....................................................................10

*Woods-Drake v. Lundy*,
  667 F.2d 1198 (5th Cir. 1982) ..................................................................................11

*Zamora v. City of Hous.*,
  798 F.3d 326 (5th Cir. 2015) ...............................................................................2, 12

## STATUTES, REGULATIONS, AND OTHER AUTHORITIES

18 U.S.C. § 1514A(c)(1)...............................................................................................8

28 U.S.C. § 2201(a) ...................................................................................................19

29 U.S.C. § 794...........................................................................................................4

29 U.S.C. § 794a .........................................................................................................6

42 U.S.C. § 2000d .......................................................................................................6

42 U.S.C. § 12101(b)(2) ............................................................................................23

42 U.S.C. § 12103(1)(A) ...................................................................................24

42 U.S.C. § 12181 ...............................................................................................4

Tex. Hum. Res. Code § 121.003 ....................................................................4, 13

28 C.F.R. § 35.160(c)(1) ......................................................................18, 19, 22

28 C.F.R. § 35.160(c)(2) ..............................................................................19, 22

28 C.F.R. § 36.303(b) .......................................................................................24

28 C.F.R. § 36.303(c)(1) ...................................................................................23

Restatement (Second) of Contracts § 351 .......................................................14

Restatement (Second) of Contracts § 353 .......................................................14

Restatement (Second) of Contracts § 355 ..................................................14, 15

ADA Requirements – Effective Communication, U.S. Dep't of Justice, *available at*
    https://bit.ly/2LjgXD4 (last visited Oct. 3, 2019) ................................ passim

Federal Communications Commission - Video Relay Services, *available at*
    https://bit.ly/2iG8NrT (last visited Oct. 3, 2019) ......................................4

Fifth Circuit Civil Jury Instructions (revised Oct. 2016), *available at*
    https://bit.ly/2nQjv3H (last visited Oct. 3, 2019) ...................................17

**INTRODUCTION**

Plaintiff Jane Cummings opposes Defendant's Motion to Dismiss or Alternatively Motion for Summary Judgment. (ECF No. 41.) This Court has subject-matter jurisdiction, and the record contains disputed issues that must be resolved at trial.

To begin, Ms. Cummings is entitled to emotional-distress damages under the Rehabilitation Act. (Compl. ¶¶ 25, 49, ECF No. 1.) Although the Supreme Court has not yet determined whether such damages are available, a few of its decisions offer a helpful roadmap. Two key decisions are *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992) and *Barnes v. Gorman*, 536 U.S. 181 (2002). *Franklin* stated that money damages, along with injunctive relief, are available under the Rehabilitation Act, and *Barnes* clarified that one form of damages— punitive damages—is unavailable. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1198 (11th Cir. 2007). The *Barnes* Court viewed the relationship between Congress and federal-funding recipients as contractual in nature, and so damages are appropriate "only if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature." *Barnes*, 536 U.S. at 186. Thus, punitive damages are not an appropriate remedy because they merely punish offending conduct and do not comply with fair-notice principles under contract law. *Id.* at 189.

The Eleventh Circuit—the only circuit court to address the issue—applied this contract-law analogy and held that a litigant may recover emotional-distress damages under the Rehabilitation Act. *Sheely*, 505 F.3d at 1198–99. Unlike punitive damages, the court explained, emotional-distress damages "are plainly a form of compensatory damages designed to 'make good the wrong done,'" and they comply with fair-notice principles because "emotional distress is a predictable, and thus, foreseeable, consequence of discrimination." *Id.* And as a practical reality, depriving plaintiffs the right to such relief would gut the statute's protections and "often leave . . .

1

victims remediless" because emotional distress is frequently "the only alleged damage to the victim and thus the *only* 'available remedy to make good the wrong done.'" *Id.* at 1194 & 1199.

What is more, the Fifth Circuit has recognized in another context that if a plaintiff "suffers emotional distress from actionable [behavior]," then emotional-distress damages "are necessary to make [her] whole." *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 263–67 (5th Cir. 2014) (per curiam) (analyzing the Sarbanes-Oxley Act's anti-retaliation provision on whistleblower claims, which "prohibits certain threats and harassment against employees and purports to afford all relief necessary to make the employees whole") (quotation marks omitted); *see also Feldman-Boland v. Stanley*, No. 15cv6698, 2016 U.S. Dist. LEXIS 90994, at *16–17 (S.D.N.Y. July 13, 2016) ("With respect to damages for emotional distress, every circuit court to address the issue holds that such damages may be recoverable" under the Sarbanes-Oxley Act.). Indeed, "[p]unitive damages are not compensatory," *Barnes*, 536 U.S. at 189, but emotional-distress damages are, *Zamora v. City of Hous.*, 798 F.3d 326, 335 (5th Cir. 2015).

Even if emotional-distress damages were unavailable, Ms. Cummings is still entitled to nominal damages under the Rehabilitation Act because of technical violations of the law. *See Farrar v. Cain*, 756 F.2d 1148, 1152 (5th Cir. 1985) ("Even when a violation of a civil right causes no actual injury to the plaintiff, the plaintiff is entitled to recover nominal damages."). As another basis for subject-matter jurisdiction, Ms. Cummings is entitled to declaratory relief under the Americans with Disabilities Act and the Rehabilitation Act because Defendant has neither written policies nor written training materials on effective communication. *See DIRECTV, Inc. v. Contreras*, No. C-03-350, 2004 U.S. Dist. LEXIS 28571, at *13 (S.D. Tex. Jan. 5, 2004) ("A request for declaratory relief may be considered independently of whether other forms of relief are appropriate."). For these reasons and others, the Court must deny Defendant's Motion.

2

**BACKGROUND**

## I. Plaintiff Jane Cummings Is Deaf, and Her Primary Language Is American Sign Language

To set the proper context, a brief background will suffice. Ms. Cummings is deaf and "communicates primarily in American Sign Language." (Compl. ¶ 1.) American Sign Language (or "ASL" for short) is a foreign "language comprised of hand motions, facial expressions, eye gazes, and body postures. Although many deaf people in the United States use ASL to communicate, ASL's syntax and grammar are not derived from English." *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 255 n.1 (D.D.C. 2015) (internal citation omitted). The languages are distinct, and "[i]n many cases, there is no one-to-one correspondence between signs in ASL and words in the English language." *United States EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1105 (9th Cir. 2010).

## II. Defendant Denied Her Requests for an Interpreter

Defendant Neighborhood Assistance Corporation of America (or "NACA") advertises itself as "the largest non-profit HUD-certified community advocacy and homeownership organization" with "the most effective homeownership programs in the country." (APP.3.)[1] "The vast majority of NACA homebuyers . . . have neither perfect credit nor substantial savings." (*Id.*) Falling in that majority, Ms. Cummings sought to attend a Homebuyer Workshop, "a free educational forum which is open to everyone *prior to* determining your status as a NACA Member or Non-Member." (APP.4 (emphasis added); *see also* Compl. ¶ 12.) Put another way, the Homebuyer Workshop is open to everyone—not solely NACA members because there are no

---

[1] Citations to "APP." refer to the Appendix.

eligibility requirements. In fact, Ms. Cummings was required to attend the Homebuyer Workshop before even being considered for NACA membership.

In the summer of 2016, Ms. Cummings contacted Defendant's Dallas, Texas office through Video Relay Service—twice—to request ASL interpreters.[2] (Compl. ¶¶ 12–14 & 19–20.) Those requests were denied. (*Id.* ¶ 21.) As Ms. Cummings has alleged, first in her Complaint and then again in discovery, she spoke with an individual named Celia Garza. (*See, e.g.*, *id.* ¶ 12.) Shortly after the first call, Ms. Cummings submitted a complaint to the Department of Justice, and she recorded the second call. Based on her treatment, she filed this lawsuit contending that Defendant violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and Section 121.003 of the Texas Human Resources Code, Tex. Hum. Res. Code § 121.003, *et seq.*

## ARGUMENT

At the outset, two points warrant attention. Ms. Cummings withdraws her request for injunctive relief under the ADA and her state-law claim under section 121.003 of the Texas Human Resources Code. What is more, the Court denied Defendant's motion to extend the deadlines for discovery and dispositive motions, (ECF No. 37), so Defendant can only raise issues that go to subject-matter jurisdiction, which can be raised at any time, *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012).

---

[2] "Video Relay Service is a form of Telecommunications Relay Service that enables persons with hearing disabilities who use American Sign Language to communicate with voice telephone users through video equipment, rather than through typed text." Federal Communications Commission - Video Relay Services, *available at* https://bit.ly/2iG8NrT (last visited Oct. 3, 2019).

I.      **Legal Standard**

Ms. Cummings, as the party invoking jurisdiction, bears the burden of proof. *Arena*, 669 F.3d at 223. If, as here, the attack on jurisdiction is a factual one, Plaintiff must prove subject-matter jurisdiction by the preponderance of the evidence, *Irwin v. Veterans' Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (internal citation omitted), *aff'd sub. nom.*, *Irwin v. Dept. Vet. Affairs*, 498 U.S. 89 (1990), and the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," *Arena*, 669 F.3d at 223 (citation and quotation marks omitted).

II.     **Contrary to Defendant's Position, the Court Has Subject-Matter Jurisdiction**

A.      **Plaintiff Is Entitled to Emotional-Distress Damages under the Rehabilitation Act**

i.      **Defendant Ignores the Weight of Authority Allowing a Litigant to Recover Emotional-Distress Damages Based on Fair-Notice Principles**

At issue is whether Spending Clause statutes afford non-economic compensatory damages. Contrary to Defendant's position, they do. (*See* Def.'s Br. at 12–13, ECF No. 41.)

As with all statutory questions, the starting point is the text itself. *Christiana Tr. v. Riddle*, 911 F.3d 799, 806 (5th Cir. 2018). But as the Eleventh Circuit aptly noted, "the statutory language does not take us far." *Sheely*, 505 F.3d at 1190. The Rehabilitation Act states only that the remedies under Title VI "shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance." 29 U.S.C. § 794a. And Title VI "does not by itself expressly provide for a private cause of action, much less delineate specific judicial remedies." *Sheely*, 505 F.3d at 1191 (citing 42 U.S.C. § 2000d *et seq.*). "Thus, in determining whether emotional damages are available," this Court "must ask what remedies the Supreme Court has allowed a private litigant suing under Title VI to recover, and why." *Id.*

Back in 1992, the Supreme Court concluded that under Spending Clause statutes, which contain no express remedies, a federal-funding recipient is subject to money damages. *See Franklin*, 503 U.S. at 65, 76. In reaching that conclusion, the Court recognized "the long line of cases in which the Court has held that if a right of action exists to enforce a federal right and Congress is silent on the question of remedies, a federal court may order any appropriate relief." *Id.* at 69; *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[W]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."). Specifically, remedies under Spending Clause statutes are available if violations were intentional. *Franklin*, 503 U.S. at 74–75 ("Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe.") But even for intentional violations, the *Franklin* Court did not specify which kinds of damages are available.

Some clarity came from *Barnes v. Gorman*, 536 U.S. 181, 186 (2002), the last time the Supreme Court addressed "the scope of 'appropriate relief.'" The Court determined that punitive damages were unavailable under "Spending Clause legislation" by applying a "contract-law analogy." *Id.* at 186–88. Indeed, the Court's core concern was fair-notice principles under contract law—that is, a remedy is appropriate "only if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature. A funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract." *Id.* at 187. Because punitive damages do not follow the make-whole mandate imposed by *Bell v. Hood*, the Court doubted whether federal-funding recipients would have even accepted money and "agreed to exposure to such unorthodox and indeterminate liability" for punitive damages. *Id.* at 188; *see also*

6

*Guardians Ass'n v. Civil Serv. Comm'n of New York City*, 463 U.S. 582, 633 (1983) (Marshall, J., dissenting) ("When a court concludes that a recipient has breached its contract, it should enforce the broken promise by protecting the expectation that the recipient would not discriminate. The obvious way to do this is to put private parties in as good a position as they would have been had the contract been performed." (internal citation omitted)), *cited in Barnes*, 563 U.S. at 189.

Since *Barnes*, only one circuit court, the Eleventh Circuit, has addressed whether non-economic compensatory damages, such as those for emotional distress, are available under Spending Clause statutes, and the court said they are. *Sheely*, 505 F.3d at 1198. That answer stems from four Supreme Court principles: (1) "where legal rights have been invaded and a cause of action is available, generally a federal court may use *any* available remedy to afford full relief"; (2) remedies are "proper only if funding recipients have fair notice that they may be subject to them"; (3) "victims of intentional discrimination may recover compensatory damages"; and (4) "victims of intentional discrimination . . . may not recover punitive damages." *Id.* at 1191. With that primer in place, the Eleventh Circuit reached three conclusions of its own: (1) emotional-distress damages, unlike punitive damages, "are plainly a form of compensatory damages designed to 'make good the wrong done'"; (2) "[a]s a matter of both common sense and case law, emotional distress is a predictable, and thus, foreseeable, consequence of discrimination"; and (3) emotional distress is frequently "the only alleged damage to the victim and thus the *only* 'available remedy to make good the wrong done.'" *Id.* at 1198–99.

In the wake of *Sheely*, district court after district court has held that damages for emotional distress are recoverable as compensatory damages under Spending Clause statutes like the

Rehabilitation Act.[3]

Closer to home, the Fifth Circuit has already embraced similar logic, holding that the Sarbanes-Oxley Act's anti-retaliation provision "affords noneconomic compensatory damages, including emotional distress." *Halliburton*, 771 F.3d at 266–67 (citing *Sheely*, 505 F.3d at 1199). Under that statute, "the employee 'shall be entitled to all relief necessary to make the employee whole'"—echoing *Bell v. Hood. See id.* at 265 (quoting 18 U.S.C. § 1514A(c)(1)). Thus, the Fifth Circuit held that if "an employee suffers emotional distress from actionable retaliation, then

---

[3] *See, e.g.*, *Roohbakhsh v. Bd. of Trs. of the Neb. State Colls.*, No. 8:17CV31, 2019 U.S. Dist. LEXIS 142504, at *35 (D. Neb. Aug. 22, 2019) ("Emotional distress damages are generally recoverable under [a Spending Clause statute].");  *Reed v. Illinois*, No. 12-cv-7274, 2016 U.S. Dist. LEXIS 60875, at *14–15 (N.D. Ill. May 9, 2016) (declining to "find, as a matter of law, that Plaintiff is not entitled to emotional distress damages to the extent her claims allege intentional discrimination under . . . the Rehabilitation Act"); *S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 718–20 (W.D. Pa. 2015) (deferring to rule on the issue when a plaintiff sought to amend his complaint); *Prakel v. Indiana*, 100 F. Supp. 3d 661, 673 (S.D. Ind. 2015) (confirming the availability of emotional-distress damages for a claim under the Rehabilitation Act); *Toth v. Barstow Unified Sch. Dist.*, No. 12-02217 TJH (DTBx), 2014 U.S. Dist. LEXIS 169669, *7–8 (C.D. Cal. Dec. 8, 2014) ("Compensatory damages, under § 504 of the Rehabilitation Act, include emotional distress damages."); *K.G. v. Santa Fe Pub. Sch. Dist.*, No. CIV 12-1209 KBM/GBW, 2014 U.S. Dist. LEXIS 190265, at *68 (D.N.M. Nov. 17, 2014) ("[E]motional distress damages are available for intentional violations of the ADA and RA."); *Stamm v. N.Y.C. Transit Auth.*, No. 04-CV-2163 (SLT) (JMA), 2013 U.S. Dist. LEXIS 8534, at *21 (E.D.N.Y. Jan. 18, 2013) (citing *Sheely* with approval and holding that "damages for emotional distress are available"); *Lopez v. Regents of the Univ. of Cal.*, 5 F. Supp. 3d 1106, 1115 n.5 (N.D. Cal. 2013) ("[E]motional distress damages are generally recoverable under [Spending Clause statutes].");  *Luciano v. E. Cent. Bd. of Coop. Educ. Servs.*, 885 F. Supp. 2d 1063, 1075 (D. Colo. 2012) (siding with the Eleventh Circuit's analysis in *Sheely*); *Dismukes v. J&R Entm't, LLC*, No. 2:11-CV-409-CSC (WO), 2012 U.S. Dist. LEXIS 150531, at *3–4 (M.D. Ala. Oct. 19, 2012) (observing that a plaintiff may seek compensatory damages for emotional distress); *Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, No. 4:10CV00007, 2011 U.S. Dist. LEXIS 47125, at *29 (W.D. Va. May 2, 2011) (accepting the Eleventh Circuit's analysis and allowing emotional-distress damages); *Scarlett v. Sch. of the Ozarks, Inc.*, 780 F. Supp. 2d 924, 934 (W.D. Mo. 2011) ("The Court agrees with the Eleventh Circuit's analysis and finds Scarlett is not precluded from recovering non-economic damages as a matter of law."); *Lewellyn v. Sarasota Cty. Sch. Bd.*, No. 8:07-cv-1712-T-33TGW, 2009 U.S. Dist. LEXIS 48919, at *18–19 (M.D. Fla. June 1, 2009) (relying on *Sheely* as binding authority); *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 384 (W.D. Pa. 2008) ("Emotional distress is, therefore, a foreseeable consequence of a recipient's violation of the terms under which it accepted federal funds." (quotation marks omitted)).

emotional damages are necessary to make the employee whole." *Id.* at 266 (quotation marks omitted). This conclusion supports public policy and advances statutory goals:

> It would be an odd result, to say the least, to construe a statute that prohibits certain threats and harassment against employees and purports to afford all relief necessary to make the employees whole to not offer a remedy for the most usual and predictable result of threats and harassment, emotional distress.

*Id.* at 266 (cleaned up). The same logic should apply here because the "all relief" provision in *Halliburton* syncs up with *Bell v. Hood*'s presumption: "where legal rights have been invaded and a cause of action is available, generally a federal court may use *any* available remedy to afford full relief." *Sheely*, 505 F.3d at 1198.

Against this mountain of precedent, a court in this District held that Ms. Cummings was not entitled to emotional-distress damages under the Rehabilitation Act in another case. *See Cummings v. Premier Rehab, P.L.L.C.*, No. 4:18-CV-649-A, 2019 U.S. Dist. LEXIS 7587, at *9–10 (N.D. Tex. Jan. 16, 2019), *appeal docketed*, No. 19-10169 (5th Cir. Feb. 8, 2019).[4] Specifically, the court stated that: (1) emotional-distress damages, "like punitive damages, do not compensate plaintiffs for their pecuniary losses, but instead punish defendants for the outrageousness of their conduct," and (2) emotional-distress damages are "unforeseeable at the time recipients accept federal funds and expose them to unlimited liability." *Id.* at *11.

Although the court relied on out-of-circuit precedent, *Sheely* was never mentioned. Instead, the court cited three cases that all pre-date *Sheely*. First, *United States v. Forest Dale, Inc.*, 818 F. Supp. 954, 970 (N.D. Tex. 1993), is the only intra-district authority, but it is pre-*Barnes* and relies on a pre-*Franklin* case to incorrectly say that "damages under Section 504 are limited to

---

[4] The Fifth Circuit scheduled oral argument for November 6, 2019. Docket for *Cummings v. Premier Rehab, P.L.L.C.*, No. 19-10169 (5th Cir. Feb. 8, 2019).

retrospective equitable damages" when money damages are also available. Next, *Witbeck v. Embry-Riddle Aeronautical University, Inc.*, 269 F. Supp. 2d 1338, 1340 (M.D. Fla. 2003), was overturned by *Sheely*. At any rate, the court cited pre-*Franklin* cases and incorrectly stated that *Franklin* does not apply to the Rehabilitation Act. *See id.* at 1340 n.1. Finally, *Khan v. Albuquerque Public Schools*, 652 F. Supp. 2d 1211, 1222 (D.N.M. 2003), heavily relies on the faulty logic from *Witbeck*.[5]

The rationale behind *Khan*'s conclusion, which springs up in the other cases, can be broken down into three parts: (1) emotional-distress damages are "immeasurab[le] at the time of the contract's formation," (2) "courts historically have disfavored them as a form of relief in breach of contract cases," and (3) emotional-distress damages "are punitive in nature." *Khan*, 652 F. Supp. 2d at 1225.

First, while it is difficult "to place a dollar amount on one person's suffering," that is not a reason to "prohibit jurors from considering a legitimate measure as they go about their task." *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d. 1201, 1213 (11th Cir. 2010) (citing, among other cases, *Sheely*, 505 F.3d at 1199–200); *Dobbs-Weinstein v. Vanderbilt Univ.*, 185 F.3d 542, 547 (6th Cir. 1999) ("This court has recognized that in making a plaintiff whole it often will be appropriate to award . . . damages for emotional harm."); *Williams v. Trans World Airlines, Inc.*, 660 F.2d 1267, 1273 (8th Cir. 1981) ("Although it is admittedly difficult to place a value upon the resulting emotional

---

[5] Other cases that reach similar conclusions differ in detail but not substance. *See, e.g.*, *Bell v. Bd. of Educ. of the Albuquerque Pub. Schs.*, 652 F. Supp. 2d 1211, 1212 (D.N.M. 2008) ("The Court need not and will not repeat its analysis in *Khan v. Albuquerque Public Schools*, but will incorporate its discussion of damages for emotional distress therein by reference."); *Gardiner v. Nova Se. Univ., Inc.*, No. 06-60590-CIV-COHN, 2006 U.S. Dist. LEXIS 92774, at *17 (S.D. Fla. Dec. 22, 2006) (observing that "the *Witbeck* Court's analysis of the competing pre-*Barnes* district court decisions on the issue of whether emotional distress damages are available under the Rehabilitation Act remains accurate").

injury from the deprivation of a constitutional right, the common law has historically recognized a reasonable, and sometimes substantial, sum of damages for mental distress."); *Clehm v. Bae Sys. Ordnance Sys.*, No. 7:16-cv-00012, 2018 U.S. Dist. LEXIS 210793, at *26–28 (W.D. Va. Dec. 14, 2018) (collecting cases) ("Insofar as quantifying or placing a value on emotional injuries is fraught with difficulty, it is in these types of cases that the estimation of damages is part of the essence of the jury's function."). "The inquiry is inherently subjective, as jurors bring their own experiences to bear on another person's humiliation, discomfort, and shame." *Myers*, 592 F.3d at 1213.

Second, "[a]lthough the general rule is that emotional damages for breach of contract will not lie," an award is "commonplace" in cases involving "rights we cherish, dignities we respect, [and] emotions recognized by all as both sacred and personal."[6] *Sheely*, 505 F.3d at 1200. Put

---

[6] In *Khan*, the court suggests in passing that emotional-distress damages "ordinarily" involve "life or death" issues, *Khan*, 652 F. Supp. 2d at 1223, but that claim is overstated. Courts have been consistent and explicit about the availability of emotional-distress damages in all sorts of situations. *See, e.g.*, *Sheely*, 505 F.3d at 1201 n.28 (collecting cases to show that emotional-distress damages are "available for breaches of a truly wide range of contracts," including those that arise from rhinoplasty, defective carpeting, and insulting behavior toward hotel guests and train passengers); *Woods-Drake v. Lundy*, 667 F.2d 1198, 1203 (5th Cir. 1982) ("It may be presumed that some degree of emotional distress will accompany an eviction so clearly motivated by racial animus . . . ."); *Gore v. Turner*, 563 F.2d 159, 161 & 164 (5th Cir. 1977) (inviting the district court on remand to consider whether the plaintiffs are entitled to emotional-distress damages because the defendant "engaged in racial discrimination in the operation of his apartment complexes"); *Munday v. Waste Mgmt. of N. Am.*, 997 F. Supp. 681, 687 (D. Md. 1998) ("[I]t is natural and probable that an employee will suffer severe mental anguish where the breach of contract involved is one for retaliation for engaging in protected activity because engaging in such protected activity, and the retaliation, are both emotionally charged events."); *Peralta Cmty. Coll. Dist. v. Fair Emp't & Hous. Com.*, 801 P.2d 357, 361 & 370 (Cal. 1990) (Employment discrimination "can cause emotional distress" because if "an employee has been subjected to sexual abuse on the job, the injury normally is one which undermines personal dignity, not one which affects job security."); *B & M Homes v. Hogan*, 376 So. 2d 667, 672 (Ala. 1979) (concluding that it "was reasonably foreseeable . . . that faulty construction of [the plaintiffs'] house would cause them severe mental anguish," especially when the "largest single investment the average American family will make is the purchase of a home").

another way, emotional-distress damages are available if "the essence of the contract" is "so related to the matter of the mental concern of the party to whom a duty is owed under the contract that the parties would reasonably contemplate that a breach would most likely cause severe mental anguish." *Dean v. Dean*, 821 F.2d 279, 283 (5th Cir. 1987). That is the case here because emotional distress is an inevitable byproduct of discrimination. *See, e.g.*, *Dawn L.*, 586 F. Supp. 2d at 384 ("Emotional distress is . . . a foreseeable consequence of a recipient's violation of the terms under which it accepted federal funds." (quotation marks omitted)); *N.T. v. Espanola Pub. Schs.*, No. CIV 04-0415 MCA/DJS, 2005 U.S. Dist. LEXIS 48311, at *41 (D.N.M. June 21, 2005) (explaining in another setting that "the purpose of federal anti-discrimination statutes is," among other things, "to protect [individuals] from the harm to their personal well-being caused by being singled out for unfair treatment . . . on the basis of their disabilities").

Third, "[p]unitive damages are not compensatory," *Barnes*, 536 U.S. at 189, but emotional-distress damages are, *Zamora*, 798 F.3d at 335. As the Eleventh Circuit recognized, emotional-distress damages are different than punitive damages, which can "range in orders of indeterminate magnitude, untethered to compensable harm." *Sheely*, 505 F.3d at 1199. Indeed, "emotional damages, like other forms of compensatory damages, are designed to make the plaintiff whole, and therefore bear a significant and altogether determinable relationship to events in which the defendant entity participated and could have foreseen." *Id.* at 1199–200. For all these reasons, reliance on *Khan* or related cases is unavailing.

Here, a jury would understand the psychological toll that Ms. Cummings suffered as a result of NACA's denial of services:

- "Of course there's emotions related to it. I asked three years ago for provision of services so that I could attend workshops. . . . It prohibited me from doing other things that other people have opportunities for. It's emotional. Other people can access this and to put deaf people aside and say that they can't access that, and to say that we're not equal to them that we're less than them that's oppressive and it makes me angry and yes it's emotional. They didn't help me. . . . If I had had opportunities to enter the program it could have changed my life but it impacted me so that I had to leave. And I've lost a lot of things by leaving Fort Worth. It's a big loss for me." (APP.11; *see also* APP.13–14.)

- "I was frustrated, embarrassed, I was mad. I was angry. And I'll add that it's oppressive to be den[ied] that service. The services that everyone else can access and everyone else gets and I'm denied that. It's oppressive." (APP.12.)

In sum, based on case law and commonsense, a federal-funding recipient must be held liable for money damages when it intentionally violates Spending Clause statutes. Ms. Cummings is entitled to be made whole, and damages for emotional distress is an appropriate form of relief.

### ii.    Defendant Compounds Its Error by Ignoring Public Policy

Emotional-distress damages also advance sound policy considerations by providing an incentive to sue. When, as here, there is no state-law claim or other forms of compensatory damages, a litigant like Ms. Cummings has no financial recourse. Although the Texas Human Resources Code prohibits disability discrimination and provides for money damages, Tex. Hum. Res. Code §§ 121.003–121.004, that statute "applies primarily to physical access to public facilities for disabled individuals," and Cummings "was never denied physical access to any public facilities," *see Sadik v. Univ. of Houston*, No. H-03-4296, 2005 U.S. Dist. LEXIS 50074, at *27 (S.D. Tex. Aug. 1, 2005). Thus, money "damages are particularly appropriate where . . . emotional distress is the only alleged damage to the victim and thus the *only* available remedy to make good the wrong done, and the *only* way to put private parties in as good a position as they would have been had the contract been performed." *Sheely*, 505 F.3d at 1203 (internal citations and quotation

13

marks omitted). It follows, then, that emotional-distress damages, unlike punitive damages, further statutory goals beyond punishment and deterrence, creating an incentive for private citizens to sue.

It is true, as noted above, that emotional-distress damages are generally unrecoverable in breach-of-contract cases. *See Khan*, 652 F. Supp. 2d at 1223. On the other hand, these damages are allowed if, for example, "the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." Restatement (Second) of Contracts § 353 cmt. A. That is precisely the case when a federal-funding recipient violates anti-discrimination statutes enacted through Congress's Spending Clause powers. *Compare* Restatement (Second) of Contracts § 351 cmt. A ("A contracting party is generally expected to take account of those risks that are foreseeable at the time he makes the contract.") *with Sheely*, 505 F.3d at 1199 ("The frequency and acuteness with which discrimination spawns emotional distress in the victim suggest that emotional distress is a probable result, of funding recipients' breach of their promise not to discriminate . . . ." (internal citation and quotation marks omitted)). To set the right context, the relationship in cases like this one is "more analogous to a contract for personal well-being than to a commercial contract." *N.T.*, 2005 U.S. Dist. LEXIS 48311 at *41–42.[7] Putting an even finer point on it, the Restatement aligns with this conclusion based on principles of fair notice and foreseeability.[8] *Cf.* Restatement (Second) of Contracts § 355 cmt. A, illus. 1 ("A is employed as a school teacher by B. In breach of contract and without notice B discharges A by excluding him from the school building and by stating in the presence of the pupils that he is discharged.

---

[7] This damages issue has created an intra-district split in the District of New Mexico. *K.G.*, 2014 U.S. Dist. LEXIS 190265 at *68 (siding with the analysis in *N.T.* in favor of the analysis in *Khan*).

[8] It is worth noting, too, that the contract-law analogy merely had "implications for [the] construction of the scope of available remedies." *Barnes*, 536 U.S. at 187 (quotation marks omitted). The Supreme Court did not imply either "that suits under Spending Clause legislation are suits in contracts" or "that contract-law principles apply to all issues that they raise." *Id.* at 188 n.2.

14

Regardless of B's motive in discharging A, A cannot recover punitive damages from B. A can recover compensatory damages under the rule stated in § 347, including any damages for emotional disturbance that are allowable [if serious emotional disturbance was a particularly likely result].").

### iii.     Defendant's Position Contravenes Statutory Goals and Congressional Intent

The purpose of, and intent behind, the Rehabilitation Act also supports the availability of emotional-distress damages. The Rehabilitation Act, as the Fifth Circuit observed, is "one piece of a larger statutory structure designed to prevent invidious discrimination in federally funded programs." *United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1042 (5th Cir. 1984); *Baker v. Bell*, 630 F.2d 1046, 1055 n.20 (5th Cir. 1980). In enacting the statute, Congress' ambitions were two-fold: "to avoid the use of Federal funds to support discriminatory practices and to protect citizens against discriminatory practices." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012). Thus, the Rehabilitation Act reflects Congress's expectation that federal-funding recipients would not discriminate against deaf Americans. *See Baylor*, 736 F.2d at 1044 ("Congress enacted Medicare and Medicaid as a means to assure that the aged, disabled, and poor would be able to secure necessary medical services.").

Accordingly, stripping away compensatory relief "would frustrate the fundamental purpose of [the Rehabilitation Act]." *Guardians*, 463 U.S. at 625 (Marshall, J., dissenting). It bears repeating that money "damages are particularly appropriate where . . . emotional distress is the only alleged damage to the victim and thus the *only* available remedy to make good the wrong done, and the *only* way to put private parties in as good a position as they would have been had the contract been performed." *Sheely*, 505 F.3d at 1203 (internal citations and quotation marks omitted). To be sure, if a litigant has no intent to return to a defendant-entity and thus no avenue

for injunctive relief, the litigant has no incentive to sue, and "a right without an effective remedy has little meaning." *Guardians*, 463 U.S. at 626 (Marshall, J., dissenting).

Other remedies would be insufficient or impractical. Cutting off federal funds is "too Draconian to be widely used," nor is it even a remedy "for victims of past acts of discrimination because it merely assumes that other innocent individuals will also be denied the benefits of federal assistance." *Id.* at 626–27. And prospective remedies are cold comfort because they "cannot 'remedy' an injustice that has already occurred." *Id.* at 626. What is more, "[r]estricting relief to prospective remedies can only encourage recipients acting in bad faith to make no effort to comply with the statute and to stall private litigants in the knowledge that justice delayed will be justice denied." *Id.* at 627. The clear takeaway, then, is that money damages are the appropriate remedy to combat discrimination, whether through deliberate design or apathetic attitudes. *See id.* at 626; *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (underscoring how deterrence plays an important role and "operates through the mechanism of damages that are *compensatory*—damages grounded in determinations of plaintiffs' actual losses").

\* \* \*

All in all, Defendant, as a federal-funding recipient, must be held liable for money damages when it intentionally violates Spending Clause statutes like the Rehabilitation Act. The Eleventh Circuit—the only circuit court to resolve the issue post-*Barnes*—held that emotional-distress damages are a form of compensatory damages that comply with fair-notice principles. *Sheely*, 505 F.3d at 1199. Virtually every district court since *Sheely* has repeated that refrain. As *Sheely* and more make clear, damages for emotional distress, unlike punitive damages, "are plainly a form of compensatory damages designed to 'make good the wrong done,'" and "[a]s a matter of both common sense and case law, emotional distress is a predictable, and thus, foreseeable,

16

consequence of discrimination." *Id.* at 1198–99. What is more, emotional distress is frequently "the only alleged damage to the victim and thus the *only* 'available remedy to make good the wrong done.'" *Id.* at 1199. During her deposition, Ms. Cummings described the psychological toll of Defendant's actions: "I was frustrated, embarrassed, I was mad. I was angry. And I'll add that it's oppressive to be den[ied] that service. The services that everyone else can access and everyone else gets and I'm denied that. It's oppressive." (APP.12.) Ms. Cummings is entitled to be made whole, and under the weight of the authority, money damages for emotional distress are an appropriate form of relief.

### B. Even if Emotional-Distress Damages Were Unavailable, Plaintiff Is Entitled to Nominal Damages under the Rehabilitation Act Because of Technical Violations of the Law

Along with the overwhelming precedent that recognizes the availability of emotional-distress damages, Ms. Cummings is entitled to nominal damages for technical violations of the Rehabilitation Act. Put another way, "[e]ven when a violation of a civil right causes no actual injury to the plaintiff, the plaintiff is entitled to recover nominal damages." *Farrar*, 756 F.2d at 1152; *Grisham v. City of Fort Worth*, 837 F.3d 564, 569 (5th Cir. 2016) (noting that a litigant received "nominal damages in recognition that his rights were violated"); *Giles v. GE*, 245 F.3d 474, 488 (5th Cir. 2001) (Under Section 1981, "to merit any award greater than nominal damages, emotional distress damages must be supported by competent evidence concerning the injury." (citation and quotation marks omitted)); Fifth Circuit Civil Jury Instructions (revised Oct. 2016), *available at* https://bit.ly/2nQjv3H (last visited Oct. 3, 2019), at 348 ("Nominal damages are an inconsequential or trifling sum awarded to a plaintiff when a technical violation of [his/her] rights has occurred but the plaintiff has suffered no actual loss or injury."). In fact, that is the outcome of *Arce v. Louisiana State*, No. 16-14003, 2019 U.S. Dist. LEXIS 152970, at *2 (E.D. La.

Sept. 9, 2019), in which a deaf prisoner sought money damages, in pertinent part, under the Rehabilitation Act but achieved only nominal damages.

Here, a NACA representative denied Ms. Cummings's request for an ASL interpreter, asking her to bring her own. The following transcript[9] is an excerpt of Ms. Cummings's second call to NACA's Dallas, Texas office:

> **NACA REPRESENTATIVE:** "I am in the Dallas office. My name is Celia."
>
> **CUMMINGS:** "Celia, yes, I remember you. I'm calling to follow up and see if you have done any research on the ADA law and the rights. This is regards to interpreters. I'm still interested in being a part of your program. so I'm calling to follow up and see if you're still unable to provide interpreters."
>
> **NACA REPRESENTATIVE:** "Right. I had informed you that we do not have the money for that.[10] You yourself are welcomed to bring a family member to interpret for you because we do not have money to pay for interpreters."
>
> \* \* \*
>
> **NACA REPRESENTATIVE:** "Ma'am, we understand the law but we can't afford to do that. If you want to come into the office, you yourself are responsible to bring either a family member or someone else you trust to interpret for you."

(APP.18–19.)[11] That last sentence—"you yourself are responsible to bring [an interpreter]"—is a violation of the law. *See* 28 C.F.R. § 35.160(c)(1) ("A public entity shall not require an individual

---

[9] The caller is Jane Cummings, and the interpreter is interpreting for a NACA representative through a Video Relay Service.

[10] Deposition testimony confirms that hiring interpreters is not an undue burden. (APP.33–34.) Nor would frontline staff like Ms. Garza be privy to that information. (APP.37.)

[11] The Fifth Circuit has adopted an interpreter-conduit theory, and so the statements of the interpreter are attributable to the speaker—that is, the NACA representative. *See United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000); *United States v. Cordero*, 18 F.3d 1248, 1253 (5th Cir. 1994) (adopting the reasoning of the Second and Ninth Circuits on this issue); *United States v. Lopez*, 937 F.2d 716, 724 (2d Cir. 1991) ("Except in unusual circumstances, an interpreter is no more than a language conduit and therefore his translation does not create an

with a disability to bring another individual to interpret for him or her."); ADA Requirements – Effective Communication, U.S. Dep't of Justice, *available at* https://bit.ly/2LjgXD4 (last visited Oct. 3, 2019), at 5 ("The ADA places responsibility for providing effective communication, including the use of interpreters, directly on covered entities. They cannot require a person to bring someone to interpret for him or her.").[12] Thus, Ms. Cummings could also recover nominal damages.

### C.   Plaintiff Is Entitled to Declaratory Relief under the Americans with Disabilities Act and the Rehabilitation Act Because Defendant Has Neither Written Policies Nor Written Training Materials on Effective Communication

Ms. Cummings is also entitled to declaratory relief because of NACA's deficient policies and training materials on effective communication. "A request for declaratory relief may be considered independently of whether other forms of relief are appropriate." *DIRECTV*, 2004 U.S. Dist. LEXIS 28571 at *13. Sure enough, the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The tests for whether a court should issue a declaratory judgment are (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2)

---

additional level of hearsay." (brackets, citation, and quotation marks omitted)). With "no reason to doubt the accuracy of [the] translation," the statements are non-hearsay or party-opponent admissions. *Lopez*, 937 F.2d at 724.

[12] Even though the Department of Justice is referencing the ADA, courts have applied the same substantive standard for claims under the ADA and the Rehabilitation Act. *See Kemp v. Holder*, 610 F.3d 231, 234–35 (5th Cir. 1991) (per curiam). What is more, for the sake of completeness, a public entity may rely upon an accompanying adult to interpret in two circumstances that do not apply here: (1) where an "imminent threat" is occurring and (2) "where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances." 28 C.F.R. § 35.160(c)(2).

whether it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *DIRECTV*, 2004 U.S. Dist. LEXIS 28571 at *13; *see also State Auto Prop. & Cas. Ins. Co. v. Bartlett*, No. 3:12-CV-1711-P, 2012 U.S. Dist. LEXIS 193740, at *4 (N.D. Tex. Dec. 14, 2012) ("Although the Declaratory Judgment Act is remedial in nature and is to be construed liberally to achieve its purposes, it is designed to permit adjudication of claims only where there is an actual case or controversy and an adjudication would serve a useful purpose." (citation and quotation marks omitted)). Relatedly, one court concluded that declaratory relief was appropriate for a deaf prisoner's claims under the Americans with Disabilities Act and the Rehabilitation Act, contending that the defendants failed to provide accommodations in vocational and academic classroom instruction and to provide interpretive service during disciplinary, grievance, and parole proceedings. *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1034–35 (S.D.N.Y. 1995).

In pertinent part, the ADA and the Rehabilitation Act prohibit discrimination by a public accommodation like NACA. *See Kemp*, 610 F.3d at 234–35. That prohibition applies to both "'affirmative animus'" and "'apathetic attitudes.'" *See Pierce*, 128 F. Supp. 3d at 279 (quoting *Alexander v. Choate*, 469 U.S. 287, 296 (1985)); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (applying this backdrop to the ADA); *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 223 n.9 (5th Cir. 2018) (per curiam). One aspect of apathetic attitudes is poor training. To be sure, a "critical and often overlooked component of ensuring success[ful] communication is comprehensive and ongoing staff training. . . . [I]f front line staff are not aware of [policies] or do not know how to implement them, problems can arise. Covered entities should teach staff about the ADA's requirements for communicating effectively with people who have communication disabilities." ADA Requirements – Effective Communication, U.S. Dep't of

Justice, *available at* https://bit.ly/2LjgXD4 (last visited Oct. 3, 2019), at 7.

NACA has neither written policies nor written training materials that describe how to obtain an interpreter. Defendant's corporate witness was Angeanette Dowles, a national director at NACA whose supervisor is the Chief Executive Officer. (APP.30–31.) Consider her deposition testimony:

> Q. So the only written policy that NACA has on accommodating special needs [under the ADA] would be [the National Industry Standards for Homeownership Education and Counseling]; is that right?
>
> A. Yes.
>
> *   *   *
>
> Q. And this document doesn't contain any information about obtaining an interpreter, to your knowledge?
>
> A. Not to my knowledge. I've never seen anything about an interpreter. I thought interpreter would fall -- it falls under special needs, I mean, it falls under -- I mean, if you're looking at it, it says mental or physical disability, so --
>
> Q. But there's not a description of how to obtain an interpreter?
>
> A. No.
>
> *   *   *
>
> Q. So there are no written policies, procedures, or training documents that would specifically reference deaf or hard of hearing individuals?
>
> A. No.

(APP.27–28 & 32; *see also* APP.29.) Without written policies or written training materials, frontline staff like Celia Garza may not be aware if their conduct complies with the law. *See* ADA Requirements – Effective Communication, U.S. Dep't of Justice, *available at*

https://bit.ly/2LjgXD4 (last visited Oct. 3, 2019), at 7. Take, for instance, her deposition testimony:

> Q. Were you ever taught that it's appropriate *in all circumstances* to have a family member or friend act as an interpreter for someone else?
>
> A. Yes.
>
> Q. You received that training at NACA?
>
> A. I don't recall.
>
> Q. Where do you recall receiving that training?
>
> A. I want to say we discussed it in the monthly meetings [at NACA].

(APP.40.) As noted above, however, a public accommodation cannot "require an individual with a disability to bring another individual to interpret for him or her" in all circumstances—only under two exceptions, which do not apply here. 28 C.F.R. § 35.160(c)(1)–(2). As is plain from this case, the absence of written policies and written training materials appear to have tangible consequences on the community.[13] What is more, the transcript cited above references an earlier interaction between Ms. Cummings and Ms. Garza, so on two separate occasions, Ms. Cummings was denied an ASL interpreter because of an incorrect interpretation of the law.

Accordingly, a declaratory judgment would serve a useful purpose in its precedential value to remind NACA of its obligations to assess the needs of deaf individuals and provide reasonable accommodations. A declaratory judgment would also settle the controversy between the Parties about what accommodations were reasonable and necessary.

---

[13] Defendant references "a spontaneous[] volunteer sign language interpreter at a workshop" because the attendee failed "to request an interpreter in advance." (Def.'s Br. at 9 n.14) (referencing APP.35–36). Given the absence of written policies or written training materials, it is unclear whether the attendee failed to request an interpreter or an employee like Celia Garza failed to accommodate a request.

### III.   Defendant Is Not Entitled to Dismissal or Summary Judgment Because Effective Communication Is a Fact-Intensive Inquiry Best Suited for Trial

In a last-ditch effort, Defendant contends that Ms. Cummings "refused to attend the workshop because her demand for a particular accommodation was not guaranteed in advance." (Def.'s Br. at 16.) But this contention does not entitle Defendant to dismissal or summary judgment,[14] especially in cases like this one where the individual's choice is "necessary to ensure effective communication." *Biondo v. Kaleida Health*, No. 15-CV-362-FPG-LGF, 2018 U.S. Dist. LEXIS 60789, at *9 (Apr. 10, 2018), *rev'd on other grounds*, 935 F.3d 68 (2d Cir. 2019).

Congress enacted antidiscrimination laws like the ADA and the Rehabilitation Act (the "Acts") "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). To prove a violation under the Acts, Ms. Cummings must show that: (1) she is disabled within the meaning of the Acts; (2) Defendant is subject to the Acts; and (3) Ms. Cummings was denied public accommodations by Defendant because of her disability. *See Bracken v. G6 Hospitality LLC*, No. 4:14-CV-644-ALM-CAN, 2016 U.S. Dist. LEXIS 95242, at *14–15 (E.D. Tex. June 3, 2016).

To comply with the third element, Defendant was obligated to "furnish appropriate auxiliary aids and services [] necessary to ensure effective communication" between Ms. Cummings and NACA's staff. 28 C.F.R. § 36.303(c)(1). Effective communication is a two-way street, requiring all parties to be able to "receive information from, and convey information to," one another. ADA Requirements – Effective Communication, U.S. Dep't of Justice, *available*

---

[14] Under well-worn standards, a court should deny a motion to dismiss when a plaintiff states a plausible claim for relief against a defendant. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). And a court should deny summary judgment when, viewing the evidence in the light most favorable to the non-moving party, the record shows genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

*at* https://bit.ly/2LjgXD4 (last visited Oct. 3, 2019), at 1. Thus, included in the definition of "auxiliary aids and services" is "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments." 42 U.S.C. § 12103(1)(A); *see also* 28 C.F.R. § 36.303(b) (providing examples of "auxiliary aids and services").

Whether auxiliary aids or services provided effective communication is "fact-intensive," and thus the question is generally inappropriate even for summary judgment, let alone the motion-to-dismiss stage. *See, e.g.*, *Salinas v. City of New Braunfels*, 557 F. Supp. 2d 777, 783 (W.D. Tex. 2008); *Liese*, 701 F.3d at 342; *Duffy v. Riveland,* 98 F.3d 447, 454–56 (9th Cir. 1996) (same). Ms. Cummings has plausibly alleged—and the post-discovery record confirms—that because of her deafness and vision problems, using an interpreter is a necessity, not her preference. (*See, e.g.*, Compl. ¶¶ 12–14 & 19–21; APP.7–10 & 13.) Her primary language is ASL, not English. (APP.9.) In other words, Ms. Cummings has adequately plead facts that, when accepted as true, allow the Court to draw the reasonable inference that she would not be able to effectively communicate with Defendant's staff at the Homebuyer's Workshop and she was denied public accommodations by Defendant because of her disability. Thus, the Complaint contains "allegations that take the claim from conclusory to factual and beyond possible to plausible," and so Defendant's Motion must be denied. *See Rittgers v. United States*, 131 F. Supp. 3d 644, 649 (S.D. Tex. 2015).

## CONCLUSION

Defendant's Motion should be denied. (ECF No. 41.) This Court has subject-matter jurisdiction because Plaintiff is entitled to declaratory relief and either emotional-distress damages or nominal damages, and the record contains disputed issues that must be resolved at trial.

Dated:  October 3, 2019

Respectfully submitted,

By:

Andrew Rozynski
David John Hommel (*admitted pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708
arozynski@eandblaw.com
dhommel@eandblaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On October 3, 2019, I electronically filed this document with the Clerk's Office using the

CM/ECF system, which then sent a Notice of Electronic Filing to all registered attorneys.

Dated:  October 3, 2019                          Respectfully submitted,

By:

Andrew Rozynski
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708
arozynski@eandblaw.com
*Attorneys for Plaintiff*