IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE CUMMINGS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-cv-01746-X |
| | § | |
| NEIGHBORHOOD ASSISTANCE CORPORATION OF AMERICA, | § § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S BRIEF PURSUANT TO
THE COURT'S ELECTRONIC ORDER (ECF NO. 60)**

Pursuant to the Court's August 23, 2022 Order (ECF No. 60), Plaintiff Jane Cummings, by and through the undersigned counsel, addresses the effect of *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), in which the Supreme Court applied a contract-law analogy to conclude that emotional-distress damages are unavailable under the Rehabilitation Act. As in the *Premier Rehab* case, Plaintiff here filed a claim under the Rehabilitation Act seeking, among other things, emotional-distress damages.

As explained below, this case may still move forward because (1) the Supreme Court in *Cummings* did not consider that the statutory text of the Rehabilitation Act as amended in 2009 specifically provides for damages in the form of emotional pain and mental anguish, (2) *Cummings* does not apply retroactively to this case, (3) other forms of compensatory damages are still available, and (4) nominal damages are available for a violation of a legal right according to the Supreme Court and the Fifth Circuit case law.

**I.    Plaintiff is entitled to compensatory damages for her emotional distress**

There are two independent reasons why emotional distress damages are still available in this matter: (i) the Rehabilitation Act as amended in 2009 expressly provides for and incorporates the remedies under 42 U.S.C. § 1981a, which permit emotional-distress damages; and (ii) even if this Court were to disregard the statutory text, *Cummings* cannot be applied retroactively because "the rights of the parties must necessarily be determined by the law as it was when the contract was made." *Town of Koshkonong v. Burton*, 104 U.S. 668, 679 (1881) (emphasis added). Here, as discussed in *Cummings*, the relationship between the government and a federal-funding recipient like Defendant Neighborhood Assistance Corporation of America ("Defendant" or "NACA") is contractual in nature, and so a contract-law analogy applies.

### i. The Supreme Court's failure to consider the statutory text

Beginning with the text of the Rehabilitation Act, Section 794a(a)(2) provides:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

Accordingly, it is clear that "*any person* aggrieved by *any act or failure to act by any recipient of Federal Assistance . . . under section 794*" is entitled to the "*remedies*, procedures, and rights" not only in "title VI of the Civil Rights Act of 1964," but also in "subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5)." 29 U.S.C. § 794a(a)(2) (emphasis added). That is true whether the section 794 claims are for discrimination in compensation or not. *See Smith v. Berryhill,* 139 S. Ct. 1765, 1774 (2019) ("Congress' use of the word 'any' suggests an intent to use [the accompanying] term expansive[ly].") (second alteration in original). 42 U.S.C. § 2000e-5(e)(3), in turn, authorizes certain relief "[i]n addition to any relief authorized by section 1981a," and 42

2

U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

In a similar context, 42 U.S.C. § 1981a(a)(1) references 42 U.S.C. § 2000e-5(g). 42 U.S.C. § 1981a(a)(1) ("[T]he complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 USCS § 2000e-5(g)] . . . ."). At least one district court has held that this reference "is some evidence that Congress intended to provide damages against the same categories of persons under § 1981a as under § 2000e-5(g)." *Sattar v. Unocal Corp.*, 829 F. Supp. 331, 334 (N.D. Cal. 1993). Accordingly, "§ 1981a and Title VII [42 U.S.C. § 2000 et seq.] are statutes in *pari materia* and should be construed together." *Blankenship v. Warren Cnty.*, 931 F. Supp. 447, 451 (W.D. Va. 1996).

NACA cannot ask this Court to blindly disregard the statutory text and apply *Cummings*, which did not mention or address at all the statutory provisions being presented before this Court. The Supreme Court in *Cummings* ultimately held that "emotional distress damages are not recoverable" based on the premise that "the statutes at issue are silent as to available remedies." *Cummings*, 142 S. Ct. at 1571 (cleaned up). Specifically, the Supreme Court relied on its prior reading of the statute from *Barnes v. Gorman*, 536 U.S. 181 (2002): "We noted that the statutory text 'contains no express remedies.'" *Cummings* at 1571 (quoting *Barnes*, 536 U.S. at 187). Yet *Barnes* could not consider the Rehabilitation Act's adoption of 42 U.S.C. § 2000e-5(e)(3)—and thus the implications of 42 U.S.C. § 1981a(b)(3)—because the language of (e)(3) was not added until 2009 with the Lilly Ledbetter Fair Pay Act. 111 P.L. 2, 123 Stat. 5 (Jan. 29, 2009). Accordingly, the Supreme Court spoke broader than necessary when it precluded emotional-distress damages under federal law. *See Lange v. California*, 141 S. Ct. 2011, 2019 (2021)

3

(explaining that a prior opinion decided only the specific issue it addressed even though the Court had "framed [its] holding in broader terms"). Thus, neither the Court, the concurrence, nor the dissent considered the fact that the Rehabilitation Act is *not* silent as to remedies because it incorporates those remedies under section 1981a.

There is no need to turn to contract analogies when the statutory text is unambiguous, nor would the Court need to undergo additional analysis of legislative history. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1750 (2020) ("[L]egislative history can never defeat unambiguous statutory text."). To be sure, Congress may use statutory language that goes further than it intended, but "[w]hen the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest." *Id.*; *see also id.* at 1749 ("[T]hat a statute has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a legislative command.") (cleaned up).

Against this backdrop, NACA cannot "have [this Court] override a lawful congressional command . . . on the basis of a handful of sentences extracted from decisions that had no reason to pass on the argument [Plaintiffs] presents today." *Brown v. Davenport*, 142 S. Ct. 1510, 1528 (2022); *Cohens v. Virginia*, 19 U.S. 264, 399 (1821) (Marshall, C.J.) ("[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.") (cleaned up). The Supreme Court has aptly stated that the "language of an opinion is not always to be parsed as though we were dealing with language of a statute," *Reiter v. Sonotone Corp.,* 442 U.S. 330, 341 (1979), for "[j]udges expect their pronunciamentos to be read in context." *Wisehart v. Davis,* 408 F.3d 321, 326 (7th Cir. 2005); *see also Illinois v. Lidster,* 540 U.S. 419, 424 (2004) (noting that general

language in judicial opinions must be read in context and not as "referring to quite different circumstances that the Court was not then considering"); *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2280 (2022) ("Precedents should be respected, but sometimes the Court errs, and occasionally the Court issues an important decision that is egregiously wrong. When that happens, *stare decisis* is not a straitjacket.").

This Court should faithfully apply the statute because "[w]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Dodd v. United States*, 545 U.S. 353, 359 (2005) (cleaned up). Indeed, "our constitutional structure does not permit [a] Court to rewrite the statute that Congress has enacted." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 130 (2016) (cleaned up); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

### ii.  No retroactivity for the *Cummings* contract-law analogy

Even if this Court were to apply *Cummings* without analyzing the presented statutory provision, the holding should not apply to this case. The very first sentence of *Cummings* stresses an analogy to contact law: "Legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the recipients agree to comply with federally imposed conditions." *Cummings*, 142 S. Ct. at 1568. "[F]ollowing th[is] contract analogy . . . a federal funding recipient may be considered on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract." *Id.* at 1571. Under contract law, "the rights of the parties must necessarily be determined by the law as it was *when the contract was made*." *Town of Koshkonong*,

104 U.S. at 679 (emphasis added); *see also Dig. Equip. Corp. v. Desktop Direct*, 511 U.S. 863, 876 n.5 (1994) ("'The laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it, as if they were expressly referred to . . . in its terms'") (quoting *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429-30 (1934)); *Fischer v. Governor of N.J.*, 842 F. App'x 741, 752 (3d Cir. 2021) ("Changes in decisional law, even constitutional law, do not relieve parties from their pre-existing contractual obligations.") (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669–70 (1991)). Here, Defendant accepted federal funds long before *Cummings*, and Defendant did not challenge the availability of emotional-distress damages through affirmative defenses. *See* Def.'s Answer to Compl. ¶¶ 60-79. If the issue was seriously disputed, Defendant could have filed a motion to dismiss in 2018 when the Complaint was first filed.

But Defendant did not do so because pre-*Cummings*, the Fifth Circuit had already affirmed awards of emotional-distress damages under the Rehabilitation Act. For example, in *Delano-Pyle v. Victoria County*, 302 F.3d 567 (5th Cir. 2002), *cert. denied*, 540 U.S. 810 (2003), the Fifth Circuit affirmed an award of compensatory damages for emotional distress to the deaf plaintiff under the Rehabilitation Act where the defendant failed to accommodate the deaf plaintiff's communication needs. *Id.* at 574–76. The compensatory damages included $100,000 "for pain, suffering and *emotional distress* sustained by the Plaintiff in the past," and $100,000 "for pain, suffering and *emotional distress* sustained by the Plaintiff reasonably expected to be incurred in the future[.]" *DeLano-Pyle v. Victoria County, et al.*, No. 1:98-cv-00171 (S.D. Tex. 2000), ECF No. 87 at 18 & ECF No. 91 at 1 (emphases added); *see also Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 263–67 (5th Cir. 2014) (per curiam) (recognizing in another context that if a plaintiff "suffers emotional distress from actionable [behavior]," then emotional-distress damages

"are necessary to make [her] whole."); *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1198–99 (11th Cir. 2007) (concluding that damages for emotional distress "are plainly a form of compensatory damages designed to 'make good the wrong done'" and that "[a]s a matter of both common sense and case law, emotional distress is a predictable, and thus, foreseeable, consequence of discrimination"). Thus, at the time of the underlying discrimination, Defendant was on notice that it could expose itself to liability of emotional-distress damages. *See Cummings*, 142 S. Ct. at 1570 ("A particular remedy is thus appropriate relief in a private Spending Clause action only if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature.") (emphasis in original) (cleaned up). Defendant did not lodge any objections based on *Delano-Pyle* or even *Sheely*.

Parenthetically, Defendant is subject "to those remedies traditionally available in suits for breach of contract." *Cummings*, 142 S. Ct. at 1571. In accepting federal funds, Defendant made a promise to refrain from discrimination. Courts adjudicating common-law cases involving breaches of promises along these lines have traditionally approved awards of emotional-distress damages. In 1901, for example, a Texas court declared "[t]hat damages for mental pain, anxiety, distress, or humiliation suffered . . . may be recovered, though unaccompanied with physical injury, pain or suffering, is now too well settled in this State to admit of question." *Mo., Kan. & Tex. Ry. Co. v. Ball*, 61 S.W. 327, 329 (Tex. Civ. App. 1901). As another example, in 1910, the New York Court of Appeals affirmed the award of such damages where a person with a ticket to use a bathhouse was denied entry and turned away with a derogatory term for a person with Jewish ancestry. *Aaron v. Ward*, 121 N.Y.S. 673, 673–74 (N.Y. App. Div. 1910), *aff'd*, 96 N.E. 736 (N.Y. 1911); *see also Odom v. E. Ave. Corp.*, 34 N.Y.S.2d 312, 316 (N.Y. Sup. Ct. 1942) (emotional-distress damages where hotel restaurant refused to serve patron because of his race). This conclusion is also

consistent with the core question in *Cummings*: "In order to decide whether emotional distress damages are available under the Spending Clause statutes . . . here, we therefore ask a simple question: Would a *prospective* funding recipient, at the time it engaged in the process of deciding whether to accept federal dollars, have been aware that it would face such liability?" *Cummings*, 142 S. Ct. at 1570–71 (cleaned up and emphasis added). Defendant is not a prospective funding recipient, and at the time it accepted federal funds and discriminated against Plaintiff, the law in Texas and the Fifth Circuit was clear.

## II.     Plaintiff is entitled to compensatory damages based on an expectation interest

Even if the Court were to conclude that emotional-distress damages are unavailable under federal law, Plaintiff is entitled to other forms of compensatory damages. As just noted, Defendant is subject "to those remedies traditionally available in suits for breach of contract." *Cummings*, 142 S. Ct. at 1571. "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." Restatement (Second) of Contracts § 347 cmt. a (Am. L. Inst. 1981). Here, any aspiring homeowners like Plaintiff expect that they will be able to attend, understand, participate, learn, communicate, and join Defendant's workshops. They also expect that they will become Defendant's members to gain access to the information they need to own their own homes.

Indeed, two district courts have already confirmed the availability of expectation-interest damages in the post-*Cummings* era. *See Montgomery v. District of Columbia*, No. 18-1928 (JDB), 2022 U.S. Dist. LEXIS 92281, at *74 & 76–77 (D.D.C. May 23, 2022) ("[W]hile [the plaintiff] cannot recover either emotional distress or reputation damages . . . he may be able to recover some small amount of damages to compensate him for the opportunity he lost when he was denied the

8

ability to meaningfully access and participate in his interrogations."); *Fantasia v. Montefiore New Rochelle*, No. 19-CV-11054, 2022 U.S. Dist. LEXIS 107935, at *6 (S.D.N.Y. June 16, 2022) (holding that "a plaintiff could pursue expectation damages as a remedy for violations of the [Rehabilitation Act]" even after *Cummings*). The *Montgomery* court's thoughtful, well-reasoned decision should govern this case:

> [T]he loss of opportunity [the plaintiff] suffered due to his alleged inability to meaningfully access his interrogations permits him to survive summary judgment.
>
> *Cummings* does not require a different conclusion. Using the contract analogy applied in that case, here, the [defendant] agreed to receive federal funds in exchange for promising to refrain from discriminating against qualified individuals with disabilities. [The plaintiff], as a third-party beneficiary, alleges that the [defendant] failed to uphold that promise, which resulted in him losing the benefit of the bargain—*i.e.*, being able to participate fully in his interrogations. A damages remedy for this type of alleged harm would be entirely appropriate in a traditional contract case.

*Id.* at *75–76 (internal citations omitted).

In that case, the plaintiff never explicitly requested expectation-interest damages in his complaint or summary-judgment briefing. Am. Compl., *Montgomery v. District of Columbia*, No. 1:18-cv-01928-JDB (May 17, 2021), ECF No. 48; Pl.'s Opp'n Br., *Montgomery v. District of Columbia*, No. 1:18-cv-01928-JDB (Nov. 17, 2021), ECF No. 56. Although the defendant argued that the plaintiff had waived this claim, the court rejected that argument because the plaintiff alleged that the defendant's failure to accommodate his disability "led to him suffering greater injury or indignity than other[s]" and "denied [him] the ability to engage in his interrogations." *Montgomery*, 2022 U.S. Dist. LEXIS 92281 at *73–76 (cleaned up).

Like the defendant in *Montgomery*, Defendant may argue that Plaintiff waived her right to such damages by referring to the Parties' letter previously submitted to the Court. *See* ECF No. 49

9

at 1. Such argument would be unavailing for at least three reasons. First, like the plaintiff in *Montgomery*, Plaintiff also alleged that Defendant's failure to accommodate her disability led to an unequal treatment and a loss of opportunity. Compl. ¶¶ 2, 3, 9-26. Indeed, Plaintiff is not required to explicitly request expectation-interest damages in her complaint. *See e.g., LG Capital Funding, LLC v. Coroware, Inc.*, No. 16 Civ. 2266 (AMD) (PK), 2017 U.S. Dist. LEXIS 146190, at *11 (E.D.N.Y. Sep. 8, 2017) ("The plaintiff did not explicitly request expectation damages in its motion for default judgment[,]" but "since the plaintiff's complaint requests 'other and further relief' as the court 'may deem just, proper, and in the interest of justice,' the question was adequately presented below.") (internal citation omitted).

Second, Plaintiff could not have waived such damages because they were not clearly available until the Supreme Court's decision in *Cummings*. "A waiver in any kind of a case, is an intentional relinquishment of an existing right" and "[t]he right . . . allegedly waived must be in existence and be known to exist by the party possessing it." *Davis v. Holman*, 354 F.2d 773, 776 (5th Cir. 1965) (cleaned up). When the Parties submitted their letter on damages in October 2019—before the Fifth Circuit's decision in *Cummings*, the Fifth Circuit had already affirmed awards of emotional-distress damages under the Rehabilitation Act, *Delano-Pyle*, 302 F.3d at 574–76. As such, the availability of expectation-interest damages under the Rehabilitation Act was unclear before *Cummings*. That is, Plaintiff "right [to expectation-interest damages] . . . allegedly waived . . . [was not] known to exist by the party possessing it." *Davis*, 354 F.2d at 776 (cleaned up). Thus, Plaintiff could not stipulate away that remedy.

Third, should the Court decide that Plaintiff is not entitled to other damages because of the stipulation waiving other damages in their letter, the Court should then allow her to recover emotional distress damages because "Plaintiff stipulate[d] her damages are . . . emotional distress

10

based on Defendant's alleged denial of an interpreter in the telephone calls." ECF No. 49 at 1. That is, the Court may not take a line-item-veto approach to the stipulations listed in the Parties' letter. This is especially the case because the Fifth Circuit allowed emotional-distress damages at the time and *Cummings* cannot apply retroactively, as explained above.

In sum, Plaintiff had an expectation interest in the ability to participate in Defendant's programs fully and equally, to become a member of Defendant, and to gain access to the information she needs to own her own home. Defendant denied her this expectation interest by failing to provide the ASL interpreters necessary for her participation. Because Plaintiff was not provided with accommodations that allowed her to effectively communicate and equally participate, Defendant did not provide Plaintiff with the rights afforded to hearing individuals. Thus, Plaintiff should be entitled to compensatory damages under an expectation-interest theory.

### III. Plaintiff is entitled to nominal damages

Even if the Court were to conclude that no form of compensatory damages is available under federal law, Plaintiff would be entitled to nominal damages.[1] First, Plaintiff sought in her Complaint "[a]ny and all other relief that this Court finds necessary and appropriate." Compl. at 11 § d(iv). When the "complaint seeks all such further relief as the Court deems necessary and proper, it is unnecessary for the plaintiff to specifically plead nominal damages." *Neutron Depot, LLC v. Bankrate, Inc.*, No. AU-16-CA-01170-SS, 2018 U.S. Dist. LEXIS 227269, at *2 (W.D. Tex. Aug. 16, 2018); *see also Mitchell v. Horn*, 318 F.3d 523, 533 n.8 (3d Cir. 2003) ("[I]t is not necessary to allege nominal damages. Moreover, Mitchell's complaint seeks 'other relief as it may appear the plaintiff is entitled.' We construe this 'catch-all' prayer broadly to include a request for

---

[1] Nominal damages are not compensatory: Compensatory damages "redress[] a compensable harm," and "[n]ominal damages are damages in name only"—"a legal fiction with no existence in point of quantity." *Uzuegbunam*, 141 S. Ct. at 807 (Roberts, C.J., dissenting) (cleaned up).

11

nominal damages."); *Yniguez v. Arizona*, 975 F.2d 646, 647 n.1 (9th Cir. 1992) (per curiam) (holding that "all other relief that the Court deems just and proper under the circumstances" requested in the complaint "is sufficient to permit the plaintiff to pursue nominal damages."); *Minn. Lawyers Mut. Ins. Co. v. Batzli*, 442 F. App'x 40, 52 n.19 (4th Cir. 2011) (construing "such other and further relief as the Court deems just" to include nominal damages); *Boxer X v. Donald*, 169 F. App'x 555, 559 (11th Cir. 2006) (per curiam) ("We conclude that Boxer did seek nominal damages when his complaint requested compensatory damages and 'any other relief the court deem[s] appropriate.'"); *Aref v. Lynch*, 833 F.3d 242, 266–67 (D.C. Cir. 2016) (holding that the complaint that sought "such other relief as this Court deems just and proper" made out a claim for nominal damages); *Calhoun v. DeTella*, 319 F.3d 936, 943 (7th Cir. 2003) (holding that a prayer for "such other relief" includes nominal damages); *Dean v. Blumenthal*, 577 F.3d 60, 66 n.3 (2d Cir. 2009) ("Although [the plaintiff's] complaint seeks only 'damages,' this term can include nominal damages."). Indeed, Fed. R. Civ. P. 54(c) provides that final judgments shall "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."

Second, nominal damages are available under the Supreme Court precedent. In *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), the Supreme Court held that "every violation of a right imports damage" and "nominal damages can redress [such an] injury even if [a plaintiff] cannot or chooses not to quantify that harm in economic terms." *Id.* at 802 (cleaned up). Significantly, citing *Uzuegbunam*, the Fifth Circuit has already indicated that disability rights plaintiffs under Title II of the ADA—which incorporates the remedies of the Rehabilitation Act, 42 U.S.C. § 12133—can seek nominal damages regardless of *Cummings*. *Luke v. Texas*, No. 21-50791, 2022 U.S. App. LEXIS 23239, *8 n. 4 (5th Cir. 2022) ("We leave it for the district court

to decide the effect, if any, *Cummings* has on Luke's ability to recover emotional distress damages under Title II [of the ADA]. *In any event, Luke also seeks nominal damages*.") (emphasis added) (citing *Uzuegbunam*, 141 S. Ct. at 799–800); *see also Fantasia*, 2022 U.S. Dist. LEXIS 107935, at *10–12 (holding that nominal damages are available to plaintiffs under the Rehabilitation Act despite *Cummings*) (citing, among others, *Uzuegbunam*, 141 S. Ct. at 801–02).

This is especially the case here because Defendant's liability is clear, as evidenced in Plaintiff's communications with Defendant's staff. ECF No. 47 at 17–19; *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 61, 74 (2d Cir. 2001) ("[A] plaintiff who has proven a civil rights violation, but has not proven actual compensable injury, is entitled as a matter of law to an award of nominal damages."); *Park v. Shiflett*, 250 F.3d 843, 854 (4th Cir. 2001) ("[I]n a case in which a plaintiff's civil rights are found to have been violated, it is appropriate to award nominal damages."); *Grisham v. City of Fort Worth*, 837 F.3d 564, 569 (5th Cir. 2016) (noting that a litigant received "nominal damages in recognition that his rights were violated"). To be sure, a violation of the Rehabilitation Act does not require a showing of intentional discrimination. *See Alexander v. Choate*, 469 U.S. 287, 294 (1985) (rejecting the argument that the Rehabilitation Act "proscribes only intentional discrimination against the handicapped"); *McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1147 n.8 (11th Cir. 2014) ("Where a plaintiff is not seeking compensatory damages, discriminatory intent is not required. In that situation, a showing that the auxiliary aids . . . were not sufficient to provide him with an equal opportunity to benefit from the [covered entity's] treatment is enough by itself to establish a violation of both the RA and ADA."); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152 (10th Cir. 1999) ("[I]ntentional discrimination is not an element of the plaintiff's prima facie case [under the Rehabilitation Act]."); *see also Cadena v. El Paso Cty.*, 946 F.3d 717, 724 (5th Cir. 2020) ("[T]o recover *compensatory damages*, a

plaintiff *must also prove* that the discrimination was *intentional*.") (emphases added). Thus, a violation of Plaintiff's right merits nominal damages.

Third, nominal damages are available under longstanding contract-law principles. The Supreme Court has "regularly applied the contract-law analogy" in "determining the *scope* of damages remedies" available under Spending Clause statutes. *Barnes*, 536 U.S. at 186-87 (emphasis in original). As a result, "[a] funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract." *Id.* at 187. According to the Second Restatement, "a breach of contract by a party against whom it is enforceable always gives rise to a claim for damages." Restatement (Second) of Contracts § 346 cmt. b (Am. L. Inst. 1981). Even in cases where "loss is caused but recovery for that loss is precluded because [of unforeseeability and lack of fair notice, among] other limitations . . . *the injured party will nevertheless get judgment for nominal damages*." *Id.* (emphasis added and internal citations omitted). Thus, applying this contract-law principle, nominal damages should be available to a plaintiff who proves a legal violation of Spending Clause legislation.

## CONCLUSION

For all these reasons, compensatory damages and nominal damages are available to Plaintiff and this case may move forward.

Dated:  September 23, 2022                    Respectfully submitted,

                                              /s/ Andrew Rozynski
                                              _____
                                              Andrew Rozynski (*admitted pro hac vice*)
                                              **EISENBERG & BAUM, LLP**
                                              24 Union Square East, PH
                                              New York, NY 10003
                                              (212) 353-8700
                                              arozynski@eandblaw.com
                                              *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On September 23, 2022, I electronically filed this document with the Clerk's Office using the CM/ECF system, which then sent a Notice of Electronic Filing to all registered attorneys.

Dated:  September 23, 2022                          Respectfully submitted,

_____
Andrew Rozynski (*admitted pro hac vice*)
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
*Attorneys for Plaintiff*