IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JANE CUMMINGS, § § Plaintiff, § § v. § § NEIGHBORHOOD ASSISTANCE § CORPORATION OF AMERICA, § § Defendant. § | Civil Action No. 3:18-cv-01746-X |

## PLAINTIFF'S TRIAL BRIEF

Dated: July 16, 2024

Reyna Lubin (*pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
rlubin@eandblaw.com
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 1

    I.    Cummings is deaf, and her primary language is American Sign Language .................................................................................................................. 1

    II.    NACA told Ms. Cummings to bring her own interpreter ............................. 1

LIABILITY ARGUMENTS ................................................................................................... 2

    I.    NACA violated the Rehabilitation Act by failing to provide Ms. Cummings with an ASL interpreter to attend their public homeowners workshop ..... 3

DAMAGES ARGUMENTS ................................................................................................... 7

CONCLUSION ........................................................................................................................ 7

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Sandoval,*
 532 U.S. 275 (2001) ................................................................................................... 4

*Cadena v. El Paso Cty.,*
 946 F.3d 717 (5th Cir. 2020) ...................................................................................... 3

*Cuevas v. City of Jersey City,*
 No. 20-17555 (SDW)(AME), 2023 U.S. Dist. LEXIS 153076
 (D.N.J. Aug. 30, 2023) ................................................................................................ 7

*Frame v. City of Arlington,*
 657 F.3d 215 (5th Cir. 2011) ...................................................................................... 3

*Francois v. Our Lady of the Lake Hosp., Inc.,*
 8 F.4th 370 (5th Cir. 2021) ......................................................................................... 3

*Heyer v. U.S. Bureau of Prisons,*
 984 F.3d 347 (4th Cir. 2021) ...................................................................................... 1

*Hyder v. Quarterman,*
 No. C-07-291, 2007 U.S. Dist. LEXIS 96363 (S.D. Tex. Oct. 10, 2007) .................... 4

*United States v. Cordero,*
 18 F.3d 1248 (5th Cir. 1994) ...................................................................................... 5

*United States v. Lopez,*
 937 F.2d 716 (2d Cir. 1991) ................................................................................... 5, 6

*United States v. Martinez-Gaytan,*
 213 F.3d 890 (5th Cir. 2000) ...................................................................................... 5

*U.S. E.E.O.C. v. UPS Supply Chain Sols.,*
 620 F.3d 1103 (9th Cir. 2010) .................................................................................... 1

**Statutes**

29 U.S.C. § 794(a) .............................................................................................................. 3, 4

29 U.S.C.S. § 794a(b) ............................................................................................................ 7

**Regulations**

28 C.F.R. § 35.130(b)(7) ................................................................................................ 3

45 C.F.R. § 84.52(a)(4) .................................................................................................. 4

45 C.F.R. § 84.52(d)(1) .................................................................................................. 5

**Other Authorities**

Office of Inspector General, https://www.hudoig.gov/reports-publications/report/neighborhood-assistance-corporation-america-generally-administered-its ............................................................................................................. 3

15.6 Nominal Damages, Fifth Circuit Civil Jury Instructions (revised Oct. 2016), https://bit.ly/2nQjv3H ................................................................................................ 7

## INTRODUCTION

In accordance with this Court's Order dated July 16, 2024 [ECF 83], Plaintiff Jane Cummings submits this trial brief. All exhibits mentioned in this trial brief corelate to the Exhibit List in Plaintiff's Pretrial Disclosure.

## FACTUAL BACKGROUND

### I. Cummings is deaf, and her primary language is American Sign Language

Plaintiff Jane Cummings is deaf, and her primary and preferred method of communication is American Sign Language ("ASL"). For someone whose primary language is ASL, communicating in English is usually not effective because "ASL is not a visual representation of the English alphabet or English vocabulary. It is an entirely separate language with its own syntax and grammar that [is] described as 'closer to Chinese than English.'"[1] "Unlike English, ASL has no generally accepted written form."[2] Rather, "ASL is a visual, three-dimensional, non-linear language, and its grammar and syntax differ from the grammar and syntax of English and other spoken languages."[3] "In many cases, there is no one-to-one correspondence between signs in ASL and words in the English language." *Id.*

### II. NACA told Ms. Cummings to bring her own interpreter

In the summer of 2016, Ms. Cummings called Neighborhood Assistance Corporation America ("NACA") through Video Relay Services ("VRS") and requested the organization to provide her an ASL interpreter to attend NACA's workshops. She

---

[1] *Heyer v. U.S. Bureau of Prisons*, 984 F.3d 347, 350 (4th Cir. 2021).
[2] *Id.*
[3] *U.S. E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1105 (9th Cir. 2010).

was told to provide her own interpreter on two separate calls—in violation of federal law.

Ms. Cummings recorded the second call, which was translated by NACA's attorneys:

> **NACA:** "I am in the Dallas office. My name is Celia."
>
> **CUMMINGS:** "Celia, yes, I remember you. I'm calling to follow up and see if you have done any research on the ADA law and the rights. This is regards to interpreters. I'm still interested in being a part of your program. So I'm calling to follow up and see if you're still unable to provide interpreters."
>
> **NACA:** "Right. I had informed you that we do not have the money for that. You yourself are welcomed to bring a family member to interpret for you because we do not have money to pay for interpreters."
>
> \* \* \*
>
> **NACA :** "Ma'am, we understand the law but we can't afford to do that. If you want to come into the office, you yourself are responsible to bring either a family member or someone else you trust to interpret for you."[4]

The evidence presented at trial will show to the NACA unequivocally declined to provide Ms. Cummings with an interpreter to attend their public homeowner workshop. Although NACA referenced cost issues, discovery confirmed that hiring interpreters is not an undue burden for NACA, nor would frontline staff be privy to that information.

## LIABILITY ARGUMENTS

---

[4] Exhibit of transcript to be presented at trial.

I.  **NACA violated the Rehabilitation Act by failing to provide Ms. Cummings with an ASL interpreter to attend their public homeowners workshop**

The Rehabilitation Act ("RA") imposes an affirmative obligation on an organization to provide reasonable accommodations for disabled individuals.[5] A "reasonable accommodation" means that it does not impose undue financial or administrative burdens or "fundamentally alter the nature of the service, program, or activity."[6] Here, the evidentiary record irrefutably shows that NACA required Ms. Cummings to provide and pay for her own interpreter although there is no evidence that providing an interpreter would cause NACA to suffer an undue burden.

To prove a claim under Section 504 of the RA, Ms. Cummings must prove that (1) she has a qualifying disability; (2) Defendant is a recipient of federal funds; (3) Ms. Cummings was excluded from participation in, or denied the benefits of services, programs, or activities for which NACA was responsible, or was otherwise discriminated against by NACA, and (4) that such exclusion, denial of benefits, or discrimination is by reason of her disability."[7]

Ms. Cummings has a qualifying disability of deafness, and the Rehabilitation Act applies to NACA because of its receipt of Housing and Urban Development ("HUD") grants.[8] Thus, it is no surprise that NACA's corporate representative

---

[5] *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020)
[6] 28 C.F.R. § 35.130(b)(7); *Frame v. City of Arlington*, 657 F.3d 215, 232 (5th Cir. 2011) (en banc); *Cadena v. El Paso Cty.*, 946 F.3d 717, 724 (5th Cir. 2020)
[7] 29 U.S.C. § 794(a); *Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 377–78 (5th Cir. 2021).
[8] *See also* Office of Inspector General, https://www.hudoig.gov/reports-publications/report/neighborhood-assistance-corporation-america-generally-

3

testified that the RA applies to NACA. As for the last two elements, the statute makes clear that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[9] When NACA asked Ms. Cummings to provide her own interpreter, she was treated differently than non-deaf individuals because they do not have to incur costs by hiring a professional ("someone else you trust") or recruit family members (assuming they are local and fluent in sign language). Accordingly, NACA discriminated Ms. Cummings, and this discrimination was because of her deafness.

NACA also violated federal regulations that "authoritatively construe the statute."[10] Regulations make clear that a federal funding recipient cannot "[p]rovide benefits or services *in a manner that limits or has the effect of limiting the participation of qualified handicapped persons*."[11] To that end, federal funding recipients with fifteen or more employees "*shall provide* appropriate auxiliary aids to

---

administered-its; APP.38; *see also* Office of Inspector General, https://www.hudoig.gov/reports-publications/report/neighborhood-assistance-corporation-america-generally-administered-its; https://app.fac.gov/dissemination/summary/2016-12-CENSUS-0000228410; *Hyder v. Quarterman*, No. C-07-291, 2007 U.S. Dist. LEXIS 96363, at *7 (S.D. Tex. Oct. 10, 2007) ("The Fifth Circuit has determined that courts may take judicial notice of governmental websites.").
[9] 29 U.S.C. § 794(a).
[10] *See Alexander v. Sandoval*, 532 U.S. 275, 284 (2001) ("A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well.") (internal citations omitted).
[11] 45 C.F.R. § 84.52(a)(4) (emphasis added).

4

persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."[12] The "shall provide" language makes clear that a qualified individual with a disability is not required to provide her own auxiliary aid, such as an interpreter; it is the federal funding recipient's obligation.

Here, a NACA representative denied Ms. Cummings's request for an ASL interpreter, asking her to bring her own:

> **NACA:** "I am in the Dallas office. My name is Celia."
>
> **CUMMINGS:** "Celia, yes, I remember you. I'm calling to follow up and see if you have done any research on the ADA law and the rights. This is regards to interpreters. I'm still interested in being a part of your program. so I'm calling to follow up and see if you're still unable to provide interpreters."
>
> **NACA:** "Right. I had informed you that we do not have the money for that. You yourself are welcomed to bring a family member to interpret for you because we do not have money to pay for interpreters."
>
> \* \* \*
>
> **NACA:** "Ma'am, we understand the law but we can't afford to do that. If you want to come into the office, you yourself are responsible to bring either a family member or someone else you trust to interpret for you."[13]

The Fifth Circuit has adopted an interpreter-conduit theory, and so the statements of the interpreter are attributable to the speaker—that is, NACA.[14] With "no reason

---

[12] *Id.* § 84.52(d)(1) (emphasis added).
[13] Exhibit of transcript to be presented at trial.
[14] *See United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000); *United States v. Cordero*, 18 F.3d 1248, 1253 (5th Cir. 1994) (adopting the reasoning of the

5

to doubt the accuracy of [the] translation," the statements are non-hearsay or party-opponent admissions.[15]

Without written policies or written training materials,[16] frontline staff like Defendant's employee Celia Garza may not be aware if their conduct complies with the law. Take, for instance, Ms. Garza's deposition testimony:

> **Q. Were you ever taught that it's appropriate *in all circumstances* to have a family member or friend act as an interpreter for someone else?**
>
> A. Yes.
>
> **Q. You received that training at NACA?**
>
> A. I don't recall.
>
> **Q. Where do you recall receiving that training?**
>
> A. I want to say we discussed it in the monthly meetings [at NACA].[17]

As noted above, however, a covered entity cannot require an individual with a disability to bring another individual to interpret for him or her in all circumstances—only under two exceptions, which do not apply here. What is more, the transcript cited above references an earlier interaction between Ms. Cummings and Ms. Garza, and so on two separate occasions, Ms. Cummings was denied an ASL

---

Second and Ninth Circuits on this issue); *United States v. Lopez*, 937 F.2d 716, 724 (2d Cir. 1991) ("Except in unusual circumstances, an interpreter is no more than a language conduit and therefore his translation does not create an additional level of hearsay." (brackets, citation, and quotation marks omitted)).
[15] *Lopez*, 937 F.2d at 724.
[16] Exhibit of Defendant's policies to be presented at trial.
[17] Ms. Garza is expected to testify at trial.

interpreter because of an incorrect interpretation of the law. Accordingly, summary judgment is warranted.

## DAMAGES ARGUMENTS

Upon proof of this legal violation, Ms. Cummings is entitled "to nominal damages" because "every violation of a right imports damage."[18] In fact, a court recently awarded nominal damages under the RA because a courthouse failed to provide interpreters almost every day of the month: "Limiting deaf persons' access to the court to only one day per month—a day on which an ASL interpreter *might* be present—is not a reasonable accommodation. . . . Therefore, having found that Defendant discriminated against Plaintiff in violation of . . . the [Rehabilitation Act] . . . this Court awards Plaintiff nominal damages in the amount of $1.00."[19] For the same reasons, nominal damages are warranted here. Additionally, the RA provides that a court may allow the prevailing party reasonable attorneys' fees and costs.[20] 29 U.S.C.S. § 794a(b).

## **CONCLUSION**

Plaintiff contends that the trial testimony and documentary evidence will affirm that Defendant violated federal law when it failed to provide Ms. Cummings

---

[18] Doc. 65 at 3–4 (cleaned up); 15.6 Nominal Damages, Fifth Circuit Civil Jury Instructions (revised Oct. 2016), https://bit.ly/2nQjv3H, at 348 ("Nominal damages are an inconsequential or trifling sum awarded to a plaintiff when a technical violation of [his/her] rights has occurred but the plaintiff has suffered no actual loss or injury.").

[19] *Cuevas v. City of Jersey City*, No. 20-17555 (SDW)(AME), 2023 U.S. Dist. LEXIS 153076, at *17–18 & *24 (D.N.J. Aug. 30, 2023).

[20] Before a Fifth Circuit ruling, Ms. Cummings originally sought emotional-distress damages, which were left unchallenged in the Answer and throughout the discovery.

7

with an interpreter to attend their public workshop. Plaintiff respectfully requests that the Court determine that Plaintiff is entitled to full recovery.

Dated: July 16, 2024

                                                        Respectfully Submitted,

                                                        *s/Reyna Lubin*
                                                        By: Reyna Lubin NY#5540570
                                                        Andrew Rozynski NY#505446
                                                        24 Union Square East, Penthouse
                                                        New York, NY 10003
                                                        Telephone No. 212-353-8700
                                                        rlubin@eandblaw.com
                                                        arozynski@eandblaw.com
                                                        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I, Reyna Lubin, counsel for Plaintiff in the captioned cause, do hereby certify that a true and exact copy of this pleading was filed electronically with the Court on this 16th day of July, 2024. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

      Respectfully Submitted,

      *s/Reyna Lubin*
      Reyna Lubin