IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE CUMMINGS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-cv-01746-M |
| | § | |
| NEIGHBORHOOD ASSISTANCE | § | |
| CORPORATION OF AMERICA, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On July 29, 2024, the Court commenced a non-jury trial in this matter. During the proceeding, the Court received evidence and heard sworn testimony. Having considered the evidence, testimony, and oral arguments presented during the trial, along with the applicable law, the Court now enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## FINDINGS OF FACT

1. Jane Cummings was born deaf.

2. Jane Cummings has vision loss.

3. Plaintiff's primary and preferred method of communication is American Sign Language ("ASL").

4. Neighborhood Assistance Corporation of America ("NACA") is a large non-profit HUD-certified community advocacy and homeownership organization with an effective homeownership program.

5. In the summer of 2016, Plaintiff sought to attend NACA's Homebuyer Workshop.

6. NACA's Homebuyer Workshop is a free educational forum that is open to everyone prior to determining one's status as a NACA Member or Non-Member.

7. In the summer of 2016, on two separate occasions, Plaintiff contacted NACA through Video Relay Service to request NACA furnish her with an ASL interpreter for a NACA Homebuyer Workshop.

8. Video Relay Service is a service that enables persons with hearing disabilities who use ASL to communicate with voice telephone users through video equipment, rather than through typed text.

9. On the first call, NACA denied Ms. Cummings's request for an interpreter.

10. Plaintiff recorded the second call, which was translated by a service retained by NACA's attorneys. The transcript of that call was admitted as Plaintiff's Exhibit 2.

11. On the recorded second call, a NACA employee, Celia Garza, stated, "Ma'am, we understand the law but we can't afford to do that. If you want to come into the office, you yourself are responsible to bring either a family member or someone else you trust to interpret for you." That is essentially what NACA, through Ms. Garza, also told Ms. Cummings on the first call.

12. NACA confirmed, at trial, that hiring ASL interpreters does not cause an undue burden to NACA.

13. There is no evidence that NACA offered any other reasonable accommodations to Plaintiff so that she could equally participate in the workshop as do hearing/non-disabled individuals. An ASL interpreter was necessary for Plaintiff to get the full benefit of the workshop. Since that accommodation was not offered to her, nor was any other reasonable accommodation, she was not obligated to appear, or to otherwise demonstrate that she was denied reasonable accommodations to attend the workshop.

14. NACA accepts federal funding and received over $7,000,000 in federal funding in 2016.

15. NACA provided no evidence that it does not receive federal funding.

16. In denying Ms. Cummings an ASL interpreter for its workshop, NACA violated the Rehabilitation Act ("RA"), for which the Court awards Plaintiff the sum of $100 in nominal damages to be paid by NACA, plus reasonable attorney's fees and costs. The latter amounts will be determined upon attorney submissions post-trial.

17. Any finding of fact that is more properly a conclusion of law shall be so construed.

## CONCLUSIONS OF LAW

1. Ms. Cummings brought a discrimination claim against NACA under Section 504 of the RA.

2. To prove a claim under Section 504 of the RA, Ms. Cummings had to prove that (1) she has a qualifying disability; (2) NACA is a recipient of federal funds; (3) she was excluded from participation in, or denied the benefits of services, programs, or activities for which NACA was responsible; and (4) such denial of benefits was by reason of her disability.

3. Ms. Cummings has a qualifying disability of deafness, and the RA applies to NACA because of its receipt of federal funds. All elements of Section 504 of the RA were proven by Plaintiff in her case.

4. Accordingly, NACA was required to afford deaf individuals such as Ms. Cummings the same equal enjoyment and access to NACA's services as hearing individuals unless NACA could demonstrate undue financial or administrative burdens or that such provision fundamentally alters the nature of NACA's service, program, or activity.

5. The record shows that NACA was financially capable of providing Ms. Cummings with an ASL interpreter and no fundamental alteration would have occurred if that was done. Accordingly, NACA's failure to provide Ms. Cummings with an ASL interpreter violated the RA.

6. Entities cannot force a disabled person's family member to provide interpretation services for which the entity is responsible.

7. The RA imposes an affirmative obligation on an organization to provide reasonable accommodations for disabled individuals.

8. Federal regulations make clear that a federal funding recipient cannot "[p]rovide benefits or services *in a manner that limits or has the effect of limiting the participation of qualified handicapped persons*."

9. Federal funding recipients with fifteen or more employees, including NACA, "*shall provide* appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

10. The "shall provide" language makes clear that a qualified individual with a disability is not required to provide her own auxiliary aid, such as an interpreter; it is the federal funding recipient's obligation.

11. The record is devoid of evidence that any other reasonable accommodation was offered to Ms. Cummings to allow her to equally participate in NACA's workshop, including in the informational exchange and question and answer section that occurs at workshops.

12. The test is whether an individual has received an auxiliary aid sufficient to prevent any "real hindrance" in her ability to exchange information. NACA did not furnish Ms. Cummings with such an aid.

13. NACA cannot evade liability by claiming it eventually offered Ms. Cummings an ASL interpreter after she brought this suit against NACA.

14. Nominal damages are available under the RA, which also allows the court to award the prevailing party reasonable attorney's fees and costs.

15. Ms. Cummings is entitled to nominal damages for NACA's violation of her rights under the RA.

16. Even when the damages awarded are nominal, attorney's fees may be justified on the basis of the plaintiff having accomplished a goal that serves the public interest.

17. Plaintiff's suit has vindicated the civil rights of deaf individuals and deaf homebuyers utilizing NACA's services to be treated equally and, in doing so, she conferred a benefit to the public.

18. Any conclusion of law that is more properly a finding of fact shall be so construed.

**SO ORDERED**.

August 2, 2024.

_____
BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE

4